DILLINGHAM & MURPHY, LLP
WILLIAM F. MURPHY, ESQ. (SBN 82482)
JOHN N. DAHLBERG, ESQ. (SBN 85122)
J. CROSS CREASON, ESQ. (SBN 209492)
353 Sacramento Street, Suite 2000
San Francisco, California 94111
Telephone:   (415) 397-2700
Facsimile:    (415) 397-3300
wfm@dillinghammurphy.com
jnd@dillinghammurphy.com
jcc@fillinghammurphy.com

Attorneys for Defendant
SAFEWAY INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA JACKSON and KHUZEMA SAVAI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAFEWAY INC., a Delaware Corporation with its Principal Place of Business in Pleasanton, California,<br><br>Defendants | CASE NO.  3:15-cv-04419-JSC<br><br>**DEFENDANT SAFEWAY INC.'S NOTICE OF MOTION AND MOTION TO STAY TCPA ACTION; OPENING BRIEF IN SUPPORT OF MOTION TO STAY**<br><br>Date:         February 25, 2016<br>Time:        9 A.M.<br>Courtroom:  F, 15th Floor |

**TO PLAINTIFFS LINDA JACKSON and KHUZEMA SAVAI, and THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE** that on February 25, 2016, at 9:00 A.M. in Courtroom F, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, defendant SAFEWAY INC. ("Safeway") will bring on for hearing the following motion:

To stay all proceedings in this action pending decisions by the United States Supreme Court in the matter of *Robins v. Spokeo, Inc.,* 13-1339, and by the United States Court of Appeal for the District of Columbia Circuit in *ACA Int'l, et al. v. F.C.C.*, No. 15-1211. Safeway's motion to stay is supported by the accompanying Opening Brief in Support of Motion to Stay, the Declaration of J. Cross Creason in Support of Motion to Stay, the pleadings on file in this action, and this notice of motion and motion.


**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................1

II. FACTUAL BACKGROUND AND TCPA LEGAL FRAMEWORK ...........................2

    A. The Parties ................................................................................................................2

    B. Safeway's Two Call Programs and Plaintiffs' Claims .........................................3

        1. Flu Vaccination Renewal Reminder Calls ................................................3

        2. Prescription Pick-Up Reminder Calls .......................................................5

        3. Safeway Had Prior Express Consent to Make the Calls............................5

        4. Plaintiff's Proposed Discovery. .................................................................7

III. ARGUMENT .......................................................................................................................8

    A. THE COURT'S AUTHORITY TO STAY PROCEEDINGS..............................8

    B. *ROBINS V. SPOKEO, INC.* .....................................................................................9

    C. *ACA INT'L V. FCC*................................................................................................11

    D. STAYING THE ACTION MAY REDUCE OR ELIMINATE THE NEED FOR BURDENSOME AND EXPENSIVE DISCOVERY, AND BURDENSOME AND EXPENSIVE DISCOVERY DISPUTES AND WILL NOT PREJUDICE PLAINTIFFS. .................................................13

IV. CONCLUSION ................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*ACA Int'l, et al. v. F.C.C.*,
  No. 15-1211 [appeal from FCC order of July 2015,
  clarifying TCPA issues] .................................................................................. 1, 2, 11, 12, 13, 14

Acton v. Intell. Capital Mgt., Inc.,
  15-CV-4004(JS)(ARL), 2015 WL 9462110 (E.D.N.Y. Dec. 28, 2015) ........................... 9, 12

*Baird v. Sabre Inc.*
  995 F.Supp.2d 1100 (C.D. Cal. 2014) ............................................................................... 7

*Boise v. Ace USA, Inc.*,
  No. 15-Civ-21264, 2015 WL 4077433 (S.D. Fla. July 6, 2015) ............................................. 9

*Coniglio v. Iqual Corp.*,
  8:15-CV-2406-T-33AEP, 2015 WL 8521288 (M.D. Fla. Dec. 3, 2015) .................................. 9

*Davis v. Nationstar Mortg., LLC*,
  15-CV-4944, 2016 WL 29071 (E.D. Pa. Jan. 4, 2016) ............................................... 9

*Duchene v. Westlake Servs., LLC*,
  No. 2:13-cv- 01577, 2015 WL 5947669 (W.D. Pa. Oct. 13, 2015) .................................. 9, 13

*Eric B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. & Annuity Corp.*,
  Case No.: CV 15-04767-AB (JCx), 2015 WL 6579779 (C.D. Cal. Oct. 19, 2015)................. 9

*Fontes v. Time Warner Cable Inc.*,
  CV14-2060-CAS(CWX), 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015)............................. 12

*Gensel v. Performant Technologies, Inc.*,
  2015 WL 6158072 (E.D. Wis., Oct. 20, 2015, 13-C-1196) .................................................. 12

*Gomez v. Campbell-Ewald Co.*,
  14-857............................................................................................................................... 1

*Johnson v. Navient Sols., Inc.*,
  115CV00716LJMMJD, 2015 WL 8784150 (S.D. Ind. Dec. 15, 2015) ................................ 10

*Landis v. N. Am. Co*.
  299 U.S. 248 (1936) ........................................................................................................ 8

*Lathrop v. Uber Techs., Inc.*,
  14-CV-05678-JST, 2016 WL 97511 (N.D. Cal. Jan. 8, 2016).......................................... 9, 10

*Lennartson v. Papa Murphy's Holdings, Inc.*,
  C15-5307 RBL, 2016 WL 51747 (W.D. Wash. Jan. 5, 2016) ............................................... 9

*Leyva v. Certified Grocers of Cal. Ltd.*
   593 F.2d 857 (9th Cir. 1979) ................................................................................................... 8

*Lockyer v. Mirant Corp.*
   398 F.3d 1098 (9th Cir. 2005) ................................................................................................. 9

*Luster v. Sterling Jewelers,*
   1:15-cv-2854-WSD, slip op. (N.D. Ga. Dec. 17, 2015) (ECF 12-1 Def. Ex. A) .................... 9

*Mackiewicz v. Nationstar Mortg., LLC,*
   Case No.6:15-CV-00465-Orl-18GJK (M.D. Fla. Nov. 10, 2015) (ECF 9-1 Def. Ex. C) ........ 9

*Mais v. Gulf Coast Collection Bureau, Inc.*
   768 F.3d 1110 ........................................................................................................................... 7

*Pac. Bell Tel. Co. v. Cal. Pub. Utils. Comm'n*
   621 F.3d 836 (9th Cir.2010) ..................................................................................................... 7

*Reardon v. Uber Technologies, Inc.*
   2015 WL 4451209 (N.D. Cal., July 19, 2015, 14-CV-05678-JST) ......................................... 7

*Rite Aid Hdqtrs, Inc v. FCC,*
   Case No. 15-1313 ................................................................................................................... 12

*Roberts v. PayPal, Inc.*
   2013 WL 2384242 (N.D. Cal., May 30, 2013, C 12-0622 PJH),
   aff'd, 621 Fed.Appx. 478 (9th Cir. 2015) ................................................................................ 7

*Robins v. Spokeo, Inc.,*
   13-1339 .............................................................................................................. 1, 9, 10, 13, 14

*Tel.Sci. Corp. v. Hilton Grand Vacations Co., LLC,*
   Case No. 6:15-cv-969-Orl-41DAB, 2015 WL 7444409 (M.D. Fla. Nov. 20, 2015) ............... 9

*U.S. W. Commc'ns v. MFS Intelenet, Inc.*
   193 F.3d 1112 (9th Cir.1999) ................................................................................................... 7

*U.S. W. Commc'ns, Inc. v. Jennings*
   304 F.3d 950 (9th Cir.2002) ..................................................................................................... 7

*Van Patten v. Vertical Fitness Group, LLC,*
   22 F.Supp.3d 1069 (S.D. Cal. 2014) ........................................................................................ 7

*Williams v. Elephant Ins. Co.*,
   2015 WL 3631691 (E.D.Va. May 27, 2015) ........................................................................... 9

**Statutes**

28 U.S.C. § 2342 .............................................................................................................................. 7

47 U.S.C. § 402(a) ........................................................................................................................... 7

Telephone Consumer Protection Act............................................................ 1, 2, 5, 7, 9, 10, 11, 12

**Other Authorities**

*In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*,
   23 F.C.C.R. 559, 564 (Jan. 4, 2008)....................................................................... 7

*In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*,
   7 F.C.C.R. 8752, 8769 (Oct. 16, 1992) ................................................................... 7

*Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
   30 FCC Rcd. 7961 (2015) ("FCC 15-72") ........................................................ 1, 11

**Regulations**

45 C.F.R. § 160.103................................................................................................ 6

47 CFR § 64.1200(a)(2) ......................................................................................... 6

## I.    INTRODUCTION

Defendant SAFEWAY INC. ("Safeway") moves to stay this action brought under the Telephone Consumer Protection Act ("TCPA."). On January 7, 2015, at the initial Case Management Conference, the Court stayed pending discovery[1] and set a hearing date of February 28, 2016, for Safeway's motion to stay proceedings in this action pending the Supreme Court's decision in *Robins v. Spokeo, Inc.,* 13-1339, and a ruling by the D.C. Circuit Court of Appeals in *ACA Int'l, et al. v. F.C.C.*, No. 15-1211 [appeal from Federal Communications Commission's Declaratory Ruling & Order, *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) ("FCC 15-72"), clarifying TCPA issues].[2]

Many other courts have stayed TCPA actions pending resolution of the *Robins v. Spokeo, Inc.* and *ACA Int'l v. FCC*. It makes very good sense to do so here. First, apart from statutory defenses available to Safeway – for example, that Plaintiff Jackson gave her prior express consent to receive automated calls from Safeway by providing Safeway with her telephone number; that Safeway never called Plaintiff Savai[3] -- the Supreme Court's ruling in *Spokeo* may well dispose of Ms. Jackson's claims based on her lack of Article III standing, if the Supreme Court requires a plaintiff to establish some concrete harm. Safeway does not believe Ms. Jackson will be able to demonstrate any such harm.

---

[1]    CMC Transcript at 17:22-24. The Court, however, directed plaintiffs to disclose phone records subpoenaed from their carriers and directed Safeway to disclose the phone numbers from which the calls at issue in the complaint would have been placed and the identities of third party vendors used to place calls. Safeway has supplied all of that information. Plaintiffs have supplied the phone records of Plaintiff Khuzema Savai, but report that the carrier for Plaintiff Linda Jackson has not provided her phone records yet.

[2]    At the January 7, 2016, Case Management Conference, Safeway had also advised the Court that another basis for seeking a stay of all proceedings, a then-pending decision of the United States Supreme Court in *Gomez v. Campbell-Ewald Co.,* 14-857, as to whether an unaccepted Rule 68 offer for full relief made to named plaintiffs prior to class certification mooted their claims. On January 20, 2016, the U. S. Supreme Court held in a 6-3 decision that an unaccepted Rule 68 offer, by itself, would not moot the plaintiffs' claims.

[3]    Following the initial Case Management Conference and as directed by the Court, Plaintiffs supplied Mr. Savai's phone records for the relevant time period to Safeway. As expected, the number used to make the Safeway flu vaccine renewal reminder calls does not appear in Mr. Savai's AT&T telephone records.

Similarly, *ACA Int'l, et al. v. F.C.C.*, D.C. Cir. No. 15-1211, will resolve questions under the TCPA relevant to this case, including whether any putative class action should contain members who received calls because they now possess phone numbers previously owned by Safeway patients who gave prior express consent for such calls, and whether the health care message calls at issue should be exempt under the TCPA from rules requiring prior express consent. Resolution of these questions may affect the size and shape of any class and whether the plaintiffs can state any claim under the TCPA.

Safeway respectfully requests that this action be stayed pending resolution of these issues.

## II.   FACTUAL BACKGROUND AND TCPA LEGAL FRAMEWORK

### A.   The Parties

On September 25, 2015, Plaintiffs Linda Jackson and Khuzema Savai ("Plaintiffs"), both residents of California, filed this putative class action lawsuit alleging that Safeway violated the TCPA.

Safeway operates grocery stores in different parts of the United States and provides pharmaceutical services to patients through its in-store pharmacies. Safeway pharmacies offer a variety of services, including filling prescriptions and immunization services. See Complaint ¶¶ 23-25.

**Plaintiffs Jackson and Savai** purport to represent the following putative classes:

"Cell Phone Class: All persons in the United States to whom: (a) Defendant and/or a third party acting on Defendant's behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's pharmacy services; (c) to their cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Plaintiff Savai** also purports to represent the following putative class:

National Do-Not-Call Class: All persons in the United States to whom: (a) Defendant and/or any person or entity acting on Defendant's behalf initiated more than one telephone solicitation call; (b) promoting Defendant's pharmacy services; (c) in a 12-month period; (d) on their cellular telephone line or residential telephone line; (e) whose cellular or residential telephone line number(s) appear on the National Do-Not-Call registry; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial." [Complaint ¶ 59].

**B.     Safeway's Two Call Programs and Plaintiffs' Claims**

During the period covered by the complaint (September 25, 2011 through the present), Safeway ran two separate call programs using pre-recorded health-care messages directed to Safeway pharmacy patients: flu vaccine renewal reminders and prescription pick up reminders. These calls were made only to those Safeway pharmacy patients who had given their prior express consent to receive such calls by supplying their phone numbers to Safeway.

**1.     Flu Vaccination Renewal Reminder Calls**

The flu vaccine renewal reminder call program was limited to informing Safeway patients -- who (a) received a flu vaccination from Safeway in the immediately preceding flu season, (b) who had not received the vaccine (from Safeway) in the current season, and (c) had given their Safeway pharmacy a telephone number at which they could be reached -- of the availability of the updated flu vaccine at Safeway's pharmacies.[4]  The calls were limited to the flu vaccine, its availability and a mention of the Center Disease Control's recommendation to annually renew the flu vaccination.  The complete text of the pre-recorded message heard in 2014 by patients who answered their telephones personally was:[5]

> "Hello, this is a flu shot reminder from your Safeway Pharmacy.  Because you previously received a flu shot from Safeway you already know the best way to prevent the flu is by being vaccinated each year.  If you haven't already received your flu shot – now is the time! The CDC is recommending that everyone over the age of 6 months receive their flu shot this flu season.  Flu Shots are now available from your Safeway community Pharmacists, no appointment necessary, while stocks last. To opt out of future reminders, please press "9" now.  Thank you."

---

[4]     Plaintiff Savai alleges, incorrectly, that the calls touched on subjects beyond the flu vaccine and promoted Safeway's vaccination services, generally (*compare* Complaint ¶¶ 44 [alleging Plaintiff Savai received calls "marketing Safeway's pharmacy vaccination services"], *with* Complaint ¶ 37 [alleging Plaintiff Jackson received a call encouraging her to "obtain a flu shot at her local Safeway"]).

[5]     See, e.g., "CDC Study: Flu Vaccine Saved 40,000 Lives During 9 Year Period," published by the CDC at http://www.cdc.gov/flu/news/flu-vaccine-saved-lives.htm.

The complete text of the pre-recorded message left when the call was answered by a patient's answering machine was:

> "Hello, this is a flu shot reminder from your Safeway Pharmacy. Because you previously received a flu shot from Safeway you already know the best way to prevent the flu is by being vaccinated each year. If you haven't already received your flu shot – now is the time! The CDC is recommending that everyone over the age of 6 months receive their flu shot this flu season. Flu Shots are now available from your Safeway community Pharmacists, no appointment necessary, while stocks last. To opt out of future reminders, please call 866-284-6198. Thank you, goodbye."

On or about January 20, 2014, Ms. Jackson received a flu vaccination at a Safeway pharmacy. At that time, Ms. Jackson signed a consent and release form in which she also provided her cellular telephone number to Safeway. (Creason Decl. ¶ 4; Complaint ¶ 35 ["Plaintiff Jackson has also purchased seasonal flu shots at her local Safeway pharmacy"]). On November 6, 2014, Plaintiff Jackson, because (1) she had received a flu shot at a Safeway pharmacy during the preceding flu season, (2) had not yet received a flu shot from a Safeway pharmacy for the 2014-2015 flu season, and (3) had given her cell phone number to the Safeway pharmacy as a number at which she could be contacted, received a reminder call on behalf of Safeway to update her flu vaccine. (Creason Decl. ¶¶ 4-5). The Complaint alleges that Ms. Jackson's "privacy has been violated by the above-described calls from, or on behalf of, Safeway and they constitute a nuisance as they are annoying and harassing" (Complaint ¶ 40). On November 7, 2014, just one day after receiving her one flu vaccine reminder call, Ms. Jackson went to a Safeway pharmacy, received a flu vaccination and again provided her phone number to Safeway. (Creason Decl. ¶¶ 4-5).[6]

Safeway has no record showing that any flu vaccine renewal reminder call was made to Mr. Savai (Creason Decl. ¶ 3). Mr. Savai's subpoenaed AT&T phone records for the cell

---

[6] Ms. Jackson supplied her telephone number to Safeway on numerous other instances, including in her Safeway Club Card application (customer loyalty rewards program), and upon becoming a Safeway Pharmacy patient. Ms. Jackson also supplied her telephone number to Safeway on each occasion that she received the flu vaccine from Safeway, including on November 7, 2014, the day after a reminder call was placed to her number (Creason Decl. ¶¶ 4-5).

1 phone number on which the Complaint alleges he received flu vaccine reminder calls also fail
2 to show that he received any call from the number used in Safeway's flu vaccine renewal
3 reminder program. (Creason Decl. ¶ 3).[7]

### 2. Prescription Pick-Up Reminder Calls

Safeway's second call program (prescription pick-up calls) is limited to informing Safeway pharmacy patients who order prescriptions filled at a Safeway pharmacy that their requested prescription had been filled and is waiting to be picked up at the Safeway pharmacy indicated in the call. Calls are made only if the medication requested by the patient is not picked up within two days of being filled by the pharmacy, and one additional time if the medication is not picked up within seven days.

Plaintiff Savai does not allege that he received a prescription pick up reminder call. Plaintiff Jackson alleges receiving calls "soliciting Plaintiff Jackson to refill prescriptions". As discussed above, however, the prescription pick up reminder calls did not solicit Safeway patients to refill prescriptions at Safeway. Rather, the calls informed patients that medications that the patient had already asked a Safeway pharmacy to fill were ready and waiting to be picked up. Safeway has no record that Plaintiff Jackson, who alleges that she "fills and purchases prescriptions at her local Safeway pharmacy several times a month," made any complaint to Safeway about such calls until the filing of the present action.

### 3. Safeway Had Prior Express Consent to Make the Calls

Under the TCPA and the implementing regulations issued by the Federal Communications Commission ("FCC"), both Safeway call programs required, at most, the "prior express consent" of the Safeway patients who received calls. Around the midway point of the putative class period – which begins in September 2011 (Complaint ¶ 59) – the FCC revised its TCPA regulations with respect to an autodialed or prerecorded call that "includes or

---

[7] Mr. Savai's phone number would not have been called regarding a flu vaccine reminder because Safeway has no record of Mr. Savai receiving a flu vaccine from a Safeway pharmacy in the relevant time period. See also Complaint ¶¶ 46-48 [Plaintiff Savai not a Safeway pharmacy patient "for over five (5) years."]. Furthermore, Mr. Savai's cell phone number does not exist in Safeway pharmacy patient database from which phone numbers are selected to be called.

introduces an advertisement or constitutes telemarketing". 47 CFR § 64.1200(a)(2). With respect to such calls, the new regulations that took effect in 2013 require the "prior express written consent" of the called party. *Id.* § 64.1200(a)(2). Nevertheless, the two call programs at issue do not fall within the new "express prior *written* consent" rule because both deliver health care messages. *Id.* § 64.1200(a)(2) [exception from prior express written consent rule for "[a] call that delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103"].[8]

By directing calls to phone numbers supplied by Safeway pharmacy patients, the flu shot reminder program and the prescription pick up call program were designed to operate with at least the "prior express consent" of the called parties. The FCC has consistently held that the

---

[8] Calls (a) notifying individual Safeway patients who received a flu vaccination in the immediately preceding flu season from a Safeway pharmacy that Safeway's pharmacies had available the newly formulated vaccine for the current flu season, and calls (b) notifying individual Safeway patients that the prescription medications ordered by those patients and filled by Safeway's pharmacists were ready to be picked up, are "health care" messages as "defined in the HIPAA Privacy Rule, 45 CFR 160.103," and therefore exempt from the "prior express written consent" rule.

The HIPAA regulations, 45 CFR 160.103, provide the following definitions:

Health care means care, services, or supplies related to the health of an individual. Health care includes, but is not limited to, the following:

(1) Preventive, * * * care, * * * service, * * * or procedure with respect to the physical * * condition, * * of an individual or that affects * * function of the body; and

(2) Sale or dispensing of a drug, * * * in accordance with a prescription.

Health information means any information, including genetic information, whether oral or recorded in any form or medium, that:

(1) Is created or received by a health care provider, * * *

(2) Relates to * * * the provision of health care to an individual;

45 C.F.R. § 160.103

provision of one's telephone number constitutes prior express consent to receive prerecorded or automated calls. *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8769 (Oct. 16, 1992) ["persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."]; *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 564 (Jan. 4, 2008) [same]. Courts within the Ninth Circuit have consistently followed this rule. *Roberts v. PayPal, Inc.* 2013 WL 2384242, at *5 (N.D. Cal., May 30, 2013, C 12-0622 PJH), aff'd, 621 Fed.Appx. 478 (9th Cir. 2015); *Baird v. Sabre Inc.* 995 F.Supp.2d 1100, 1106 (C.D. Cal. 2014); *Van Patten v. Vertical Fitness Group, LLC,* 22 F.Supp.3d 1069, 1078 (S.D. Cal. 2014); *Reardon v. Uber Technologies, Inc.* 2015 WL 4451209, at *6 (N.D. Cal., July 19, 2015, 14-CV-05678-JST).[9]

### 4.     Plaintiff's Proposed Discovery.

Plaintiffs' current proposed written discovery to Safeway seeks, among other things, all documents demonstrating that any call recipient – not just the named plaintiffs -- gave prior express consent (Request No. 9); all documents that Safeway had an established business relationship with any call recipient – not just the named plaintiffs (Request No. 10); the names and addresses of all call recipients (Request No. 17)[10]; all documents relating to how Safeway

---

[9]     Plaintiffs (and Safeway) may not challenge the FCC's interpretation of "prior express consent" in the context of this case. *See Pac. Bell Tel. Co. v. Cal. Pub. Utils. Comm'n* 621 F.3d 836, 843 (9th Cir.2010). That is because the Hobbs Act vests the courts of appeals with exclusive jurisdiction to "enjoin, set aside, suspend (in whole or in part), or to determine the validity of" FCC orders in actions naming the United States as a party. 47 U.S.C. § 402(a) [requiring actions challenging FCC orders to be brought under Hobbs Act]; 28 U.S.C. § 2342; see, e.g., *U.S. W. Commc'ns v. MFS Intelenet, Inc.* 193 F.3d 1112, 1120 (9th Cir.1999). Because this suit was not brought pursuant to the Hobbs Act, the FCC's 1992 interpretation of "prior express consent" must be presumed valid. *See U.S. W. Commc'ns, Inc. v. Jennings* 304 F.3d 950, 958 n. 2 (9th Cir.2002*); Mais v. Gulf Coast Collection Bureau, Inc.* 768 F.3d 1110, 1119 ["The district court exceeded its jurisdiction by declaring the 2008 FCC Ruling to be inconsistent with the TCPA. Section 402(a) of the Communications Act provides that (except in limited circumstances not relevant here) any "proceeding to enjoin, set aside, annul, or suspend any order of the Commission" must be brought under the Hobbs Act. 47 U.S.C. § 402(a)."] (11th Cir. 2014).

[10]     Plaintiffs also seek the names, addresses and telephone numbers of every person called by the vendors used in the flu vaccine renewal reminder call program. (Creason Decl. ¶ 7).

obtained the telephone numbers – not just the named plaintiffs' numbers -- to which it made calls (Request No. 19). (Creason Decl. ¶ 6).

Plaintiffs also seek "all facts" that support the existence of the prior express consent as to every call recipient – not just the named plaintiffs (Interrogatory No. 11); the names, addresses and telephone numbers of every person from whom Safeway obtained prior express consent (Interrogatory No. 12); and "all facts" supporting the existence of an established business relationship between Safeway and any person – not just the named plaintiffs – that received a call (Interrogatory No. 13). (Creason Decl. ¶ 6).

In the case of Ms. Jackson alone, Safeway is presently investigating Ms. Jackson's patient records that would be responsive or potentially responsive to these requests. Some of those records reside in Safeway's pharmacy database, some reside at local Safeway pharmacies and some may reside in remote storage. The flu vaccine consent and release forms filled out by hand, referenced above, on which Ms. Jackson supplied her telephone number to Safeway (the form also asks the patient to supply personal medical history), for example, are presently located at the Safeway pharmacy where Jackson received her flu vaccines. Plaintiffs' discovery requests call for similar inquiries at to each of the thousands of people called during the alleged class period.

## III.  ARGUMENT

### A.  THE COURT'S AUTHORITY TO STAY PROCEEDINGS

A United State District Court has discretionary power to stay proceedings pending before it. See *Landis v. N. Am. Co*. 299 U.S. 248, 254 (1936). The court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal. Ltd.* 593 F.2d 857, 863 (9th Cir. 1979). Among the factors to be weighed in deciding whether to stay a pending proceeding "are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying

or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp*. 398 F.3d 1098, 1110 (9th Cir. 2005).

### B.  *ROBINS V. SPOKEO, INC.*

The Court should stay this action pending the Supreme Court's upcoming opinion in *Robins v. Spokeo, Inc.*  In *Spokeo,* the Court will address the issue of "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."  District courts have stayed TCPA cases because the decision in *Spokeo* will impact the claims of the individual plaintiffs, discovery, and the viability and or contours of the class device.[11]

The same reasons apply here.  Both Plaintiff Jackson and Savai seek only statutory damages under the TCPA (Complaint ¶¶ 40, 51, 52).  Neither plaintiff alleges a monetary or other concrete loss, damage or harm.  Instead, both Plaintiffs claim generally that their "privacy has been violated by the above-described calls from, or on behalf of, Safeway and they constitute a nuisance as they are annoying and harassing" (Complaint ¶ 40 [Jackson]; *id.* ¶ 51 [Savai]).  Whether such allegations are required, and if they are sufficient, will be likely

---

[11]   *Davis v. Nationstar Mortg., LLC*, 15-CV-4944, 2016 WL 29071, at *3 (E.D. Pa. Jan. 4, 2016); *Acton v. Intell. Capital Mgt., Inc.*, 15-CV-4004(JS)(ARL), 2015 WL 9462110, at *3 (E.D.N.Y. Dec. 28, 2015); *Luster v. Sterling Jewelers,* 1:15-cv-2854-WSD, slip op. (N.D. Ga. Dec. 17, 2015) (ECF 12-1 Def. Ex. A); *Tel.Sci. Corp. v. Hilton Grand Vacations Co., LLC*, Case No. 6:15-cv-969-Orl-41DAB, 2015 WL 7444409, at *3 (M.D. Fla. Nov. 20, 2015); *Mackiewicz v. Nationstar Mortg., LLC,* Case No.6:15-CV-00465-Orl-18GJK (M.D. Fla. Nov. 10, 2015) (ECF 9-1 Def. Ex. C); *Eric B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. & Annuity Corp.*, Case No.: CV 15-04767-AB (JCx), 2015 WL 6579779 (C.D. Cal. Oct. 19, 2015); *Duchene v. Westlake Servs., LLC*, No. 2:13-cv- 01577, 2015 WL 5947669 (W.D. Pa. Oct. 13, 2015); *Boise v. Ace USA, Inc.*, No. 15-Civ-21264, 2015 WL 4077433, at *5-6 (S.D. Fla. July 6, 2015); ); *Williams v. Elephant Ins. Co.*, 2015 WL 3631691 (E.D.Va. May 27, 2015); *Lennartson v. Papa Murphy's Holdings, Inc.*, C15-5307 RBL, 2016 WL 51747, at *5 (W.D. Wash. Jan. 5, 2016) ["to promote the orderly course of justice, Papa Murphy's motion to stay the case until the Supreme Court resolves Spokeo is GRANTED."]; *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, 15 C 5182, 2016 WL 47916, at *6 (N.D. Ill. Jan. 5, 2016) [For these reasons, the Court grants Asset Recovery's motion and stays all proceedings pending resolution by the Supreme Court of Spokeo."]; *but see Coniglio v. Iqual Corp.*, 8:15-CV-2406-T-33AEP, 2015 WL 8521288, at *1 (M.D. Fla. Dec. 3, 2015) [declining to stay TCPA action pending Supreme Court opinion in the *Spokeo* case or proceedings taking place in the D.C. Circuit.]; *Lathrop v. Uber Techs., Inc.*, 14-CV-05678-JST, 2016 WL 97511, at *5 (N.D. Cal. Jan. 8, 2016) [denying stay].

1  addressed by the U.S. Supreme Court in *Spokeo*.  The Supreme Court is likely to provide
2  guidance as to whether the named plaintiffs and the putative class members here have suffered
3  sufficient harm at Safeway's hands to have Article III standing.

4        Courts that have declined to stay TCPA cases pending the *Spokeo* decision have largely
5  done so under distinguishable circumstances.  In *Lathrop v. Uber Techs., Inc.*, *supra,* 2016 WL
6  97511, the Northern District of California recently denied a request for a stay in an TCPA
7  pending the *Spokeo* decision on the ground that, whatever the outcome in *Spokeo,* the plaintiff
8  had alleged a concrete harm in the form of cell phone charges (*id.* at *4).  *Lathrop* is
9  distinguishable because Plaintiffs here allege no such harm.  In *Johnson v. Navient Sols., Inc.*,
10 115CV00716LJMMJD, 2015 WL 8784150, at *2 (S.D. Ind. Dec. 15, 2015), the court denied a
11 stay request on the ground that a concrete harm was alleged in the form of an invasion to
12 privacy: "Johnson has alleged repeated automated calls to his cell phone directed to collection
13 of a debt owed by a third-party. Compl. ¶¶ 10-13.  His attempts to stop the calls by explaining
14 that he was not the person Navient was looking for went unheeded. *Id.*  Any harassment caused
15 by these calls could be actionable." *Id.* at *2.  As in *Johnson*, Plaintiff Jackson purports to
16 allege harassment and an invasion of privacy.  But here the factual circumstances are sure to
17 test whether Jackson could ever actually demonstrate such harm when, for example, she went
18 to Safeway to obtain a flu vaccination the very next day after her flu vaccine reminder call.
19 Moreover, *Spokeo* is likely to assist the parties and the court define a putative class with
20 standing irrespective of what Ms. Jackson or Mr. Savai may allege.

21       Other questions may arise as a result of the ruling in *Spokeo*, such as whether one must
22 have at least answered an allegedly offending call – as opposed to not answering or sending a
23 call to voice mail -- in order to establish Article III standing, or whether a mere allegation of a
24 statutory violation is sufficient.  The upcoming guidance from the Supreme Court on these
25 types of questions will benefit this action and may have the effect of narrowing class
26 definitions, as well as eliminating substantial claims and discovery.

27
28

### C.   *ACA INT'L V. FCC*

As discussed above, the FCC's interpretation of the TCPA is not subject to challenge other than in a proceeding originating in the Court of Appeals. Currently pending before the District of Columbia Circuit Court of Appeals is just such a challenge, in the form of *ACA Int'l v. FCC*, No. 15-1211. *ACA Int'l* represents a challenge by various parties to the FCC's July 2015 ruling on claims for declaratory relief concerning certain aspects of the TCPA. The D.C. Circuit's decision in *ACA Int'l* may also have an impact on this Court's determination of the proper scope of any class that may be certified in this case, and may also have the effect of eliminating Plaintiffs' claims entirely.

*ACA Int'l v. FCC* may affect the claims of certain putative class members, if any, who possess telephone numbers previously but no longer held by Safeway pharmacy patients. In its July 2015 order, the FCC concluded that the term "called party" should be defined as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." FCC 15-72 ¶ 73. In settling on this definition, the FCC rejected a suggestion made by several commentators to define "called party" as the "intended" recipient of the phone call. Id. ¶ 74. The FCC instead concluded that, subject to one limited exception, "calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based." Id. ¶ 73. The FCC created a very limited safe harbor should apply for "callers who make calls without knowledge of reassignment and with a reasonable basis to believe they have valid consent to make the call." Id. at ¶ 72. Such callers "should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." Id.

This interpretation of the "called party" under the TCPA is one of the subjects of the Hobbs Act challenge pending in the D. C. Circuit.  With respect to this challenge, the District Court for the Central District of California recently explained the following

> At first glance, it appears that the FCC's ruling expands the scope of liability in cases of reassigned phone numbers. The FCC accepted a definition of "called party" that includes the subscriber of a phone number, even where that person has received a reassigned number. Likewise, the FCC adopted only a limited safe harbor of one year, as opposed to a more expansive safe harbor as some petitioners had suggested. * * * * * See also, July 10, 2015 FCC Declaratory Ruling and Order ¶ 84 ("we see nothing in the law or legislative history suggesting that Congress intended lesser—or no—protection for the unfortunate consumer who inherited a new number [i.e., a reassigned number]"). If the Court of Appeals were to find that the FCC had reached the wrong conclusion at to any of these issues that could potentially be dispositive of the outcome in this case. * * * * While it is not necessary in the instant motion for the Court to reach the merits of Time Warner's contention, at a minimum, the Court finds that it is prudent to await further guidance from the D.C. Circuit.

*Fontes v. Time Warner Cable Inc.*, CV14-2060-CAS(CWX), 2015 WL 9272790, at *4 (C.D. Cal. Dec. 17, 2015).  Other courts have recently granted stays in TCPA actions pending resolution of *ACA Int'l v. FCC*.  *Gensel v. Performant Technologies, Inc.,* 2015 WL 6158072, at *2 (E.D. Wis., Oct. 20, 2015, 13-C-1196); *Acton v. Intell. Capital Mgt.*, Inc., 15-CV-4004(JS)(ARL), 2015 WL 9462110, at *3 (E.D.N.Y. Dec. 28, 2015).

Also being challenged in *ACA Int'l v. FCC* is the FCC's decision to exempt health care messages from the prior express consent rules, but not to exempt the same calls from the prior express consent rules when directed towards a wireless phone.  (See Petition for Review by Rite Aid Hdqtrs, Inc, D.C.Cir. Case No. 15-1313, Doc # 157848; D.C.Cir. Case #15-1211 Document #1571884 (consolidating *Rite Aid Hdqtrs, Inc v. FCC,* Case No. 15-1313, with *ACA Int'l v. FCC*, 15-1211).  If successful, this challenge would remove the need to examine the prior express consent supplied by plaintiffs or putative class members and would, instead, narrow one of the dispositive inquiries to the nature of the calls themselves (i.e., are they health care messages?  If so, the issue of prior express consent may become irrelevant to the proper disposition of this action).  This could also dramatically reduce the necessary scope of discovery in this action, both from Safeway and from its third-party vendors.  Final briefs in the

consolidated appeal are due on February 24, 2016, (D.C. Cor. Case #15-1211 Document #1577930).

### D. STAYING THE ACTION MAY REDUCE OR ELIMINATE THE NEED FOR BURDENSOME AND EXPENSIVE DISCOVERY, AND BURDENSOME AND EXPENSIVE DISCOVERY DISPUTES AND WILL NOT PREJUDICE PLAINTIFFS.

Plaintiffs Jackson and Savai do not require, and have not sought, immediate injunctive or other relief from this Court. Before the filing of the Complaint, Safeway had no record of any complaint by Ms. Jackson concerning the flu vaccine reminder calls or prescription pick up calls, and Ms. Jackson does not allege she ever complained or that she made any request to Safeway that she not receive such calls. Since the filing of the Complaint, Safeway has taken measures to prevent calls under the two programs at issue from being sent to Ms. Jackson telephone number. With respect to Mr. Savai, the AT&T telephone records his counsel has asserted would be dispositive of the issue of how many pre-recorded telephone calls he received reflect no calls from Safeway, and there is no likelihood that Mr. Savai will in the future receive any such calls because he is not a current Safeway pharmacy patient; in fact, his phone number does not exist in Safeway's pharmacy database.

Little or no prejudice would result from a brief stay pending guidance from the Supreme Court in *Spokeo* or the D.C. Circuit in *ACA Int'l v. FCC*. Briefing will be complete in *ACA Int'l v. FCC* by the end of February 2016 and a decisions in *Spokeo* will issued by the Supreme Court in the Summer of 2016, if not sooner. *See Duchene*, *supra,* 2015 WL 5947669, at *3 (citations omitted) ("A relatively short delay of definite duration would not likely affect the availability of evidence or the memory of witnesses, especially where we have no specific facts or reasoning that indicate otherwise."). Defendants, by contrast, could be prejudiced if forced to expend substantial resources in litigation only for *Spokeo* to rule that this Court lacks jurisdiction to resolve this case. See *Duchene*, *supra,* 2015 WL 5947669, at *3. The Court, too, has an interest in judicial economy in waiting to see if *Spokeo* resolves this case on jurisdictional grounds. Id."

The extent of the prejudice and potentially un-necessary burden facing Safeway absent a stay is demonstrated by the written discovery Plaintiffs' counsel have indicated they wish to propound now.  Although Plaintiffs downplayed the extent to which discovery in this case would require delving into patient medical records and the volume of such discovery at the initial Case Management Conference, this is an issue that should not be overlooked.  Without question, the type of class discovery relevant to the issue of prior express consent alone (which as discussed above, may be given orally, in writing, or simply by the provision of one's telephone number, in writing or orally at an individual Safeway store) would be both burdensome and intrusive.  Even a cursory review of Plaintiffs' proposed discovery establishes the cost and burden associated with such discovery, costs and burdens that might be substantially reduced or eliminated by the pending decisions.  For example, all documents demonstrating that hundreds of thousands of patients – not just the named plaintiffs -- gave prior express consent (Proposed Request No. 9); all documents showing that Safeway had an established business relationship with any of the hundreds of thousands of call recipients (Proposed Request No. 10); the names and addresses of all call recipients (Proposed Request No. 17); all documents relating to how Safeway obtained the telephone numbers – not just the named plaintiffs' numbers -- to which it made calls (Proposed Request No. 19).  The foregoing weighs in favor of temporarily staying the action pending resolution of *Spokeo* and *ACA Int'l.*

## IV.   CONCLUSION

For the foregoing reasons, Safeway respectfully requests that this action be stayed pending the Supreme Court's opinion in *Robins v. Spokeo, Inc.,* 13-1339 and a ruling by the D.C. Circuit Court of Appeals in *ACA Int'l, et al. v. F.C.C.*, No. 15-1211.

Dated:  January 21, 2016.                    DILLINGHAM & MURPHY

By /s/ J. Cross Creason
         Attorneys for Defendant Safeway Inc.