DILLINGHAM & MURPHY, LLP
WILLIAM F. MURPHY, ESQ. (SBN 82482)
JOHN N. DAHLBERG, ESQ. (SBN 85122)
J. CROSS CREASON, ESQ. (SBN 209492)
353 Sacramento Street, Suite 2000
San Francisco, California 94111
Telephone:     (415) 397-2700
Facsimile:      (415) 397-3300
wfm@dillinghammurphy.com
jnd@dillinghammurphy.com
jcc@fillinghammurphy.com

Attorneys for Defendant
SAFEWAY INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA JACKSON and KHUZEMA SAVAI, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>      v.<br><br>SAFEWAY INC., a Delaware Corporation with its Principal Place of Business in Pleasanton, California,<br><br>          Defendants | CASE NO.  3:15-cv-04419-JSC<br><br>**DEFENDANT SAFEWAY INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, AND OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**Date:**        **August 25, 2016**<br>**Time:**        **9 A.M.**<br>**Courtroom:**  **F, 15th Floor** |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ........................................... 1

OPENING BRIEF IN SUPPORT OF DEFENDANT SAFEWAY INC.'S MOTION FOR
SUMMARY JUDGMENT ................................................................................................... 2

I. PRELIMINARY STATEMENT. ....................................................................................... 2

II. SUMMARY OF UNDISPUTED MATERIAL FACTS ......................................................... 3

    A. The Parties and Plaintiff's Claims. ...................................................................... 3

    B. Flu Shots, and Why They Are Important. ........................................................... 5

    C. Safeway's Flu Shot Reminder Program ............................................................... 6

    D. Safeway's Two Prerecorded Flu Shot Reminder Calls to Plaintiff's Cell Phone. ......... 7

III. SAFEWAY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TCPA
CLAIMS. ........................................................................................................................ 9

    A. Plaintiff Gave Safeway Prior Express Consent to Call Her Cell Phone. ........................ 9

        1. The FCC's Standard for Prior Express Consent Under the TCPA. ................... 9

        2. The Flu Shot Reminder Call(s) At Issue Here Deliver a "Health Care Message"
as Defined in 47 C.F.R. § 64.1200(a)(2) and Are Therefore Not Subject to a
"Prior Express Written Consent" Requirement. ................................................. 11

        3. The Flu Shot Reminder Calls Were Made by a "Covered Entity" Under
HIPAA, With the Assistance of a "Business Associate." ................................ 12

        4. Plaintiff Gave Safeway Prior Express Consent to Call Plaintiff's Cell Phone. 12

            a. Plaintiff Gave Safeway Prior Express Consent to Call Her on Her Cell
Phone by Providing Her Cell Phone Number to Safeway Repeatedly in
Connection with Flu Shots and Other Pharmacy Transactions. ........... 13

            b. The Flu Shot Reminder Calls Are Within the Scope of the Prior
Express Consent Provided by Plaintiff Jackson. ................................. 17

    B. Safeway Did Not Need Any Consent from Plaintiff to Make Flu Shot Reminder Calls
to Plaintiff's Cell Phone. ............................................................................... 18

        1. The Flu Shot Reminder Calls Are Exempt from the TCPA as Emergency
Calls. .......................................................................................................... 18

        2. The Prerecorded Flu Shot Reminder Calls Placed by Safeway to Plaintiff's
Cell Phone Do Not Create TCPA Liability Because They Fall Within the
FCC's 2015 Order's Exception for Certain Healthcare Calls Not Charged to
the Called Party. ......................................................................................... 20

IV. CONCLUSION. .......................................................................................................... 23

**TABLE OF AUTHORITIES**

**Cases**

*Andersen v. Harris & Harris,*
 No. 13–CV–867–JPS, 2014 WL 1600575 (E.D.Wis. Apr. 21, 2014)...........................................13

*Baird v. Sabre Inc.,*
 995 F.Supp.2d 1100 (C.D.Cal.2014) .........................................................................13, 14

*Baisden v. Credit Adjustments, Inc.*
 (6th Cir. 2016) 813 F.3d 338 ..............................................................................................16

*Cf. Saunders v. NCO Financial Systems, Inc.,*
 910 F.Supp.2d 464 (E.D.N.Y.2012) ....................................................................................14

*Chesbro v. Best Buy Stores, L.P.*
 (9th Cir. 2012) 705 F.3d 913 ..............................................................................................19

*Emanuel v. L.A. Lakers, Inc.,*
 No. CV 12–9936–GW(SHx), 2013 WL 1719035 (C.D.Cal. Apr. 18, 2013) ........................13

*Friedman v. Massage Envy Franchising, LLC*
 (C.D. Calif. 2013) 2013 WL 3026641 .................................................................................19

*Landgraf v. USI Film Prods.*
 (1994) 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 .....................................................21

*Leckler v. CashCall*
 (N.D. Calif. 2008) 2008 WL 5000528 .................................................................................11

*Mais v. Gulf Coast Collection Bureau, Inc.*
 (11th Cir. 2014) 768 F.3d 1110 .....................................................................................14, 16

*Mims v. Arrow Financial Services, LLC*
 (2012) 132 S.Ct. 740 ...........................................................................................................19

*Murphy v. DCI Biologicals Orlando, LLC*
 (11th Cir. 2015) 797 F.3d 1302 .....................................................................................13, 14

*Olney v. Job.com, Inc.,*
 No. 1:12–CV–01724–LJO, 2014 WL 1747674 (E.D.Cal. May 1, 2014)..........................11, 13

*Pac. Bell v. Pac–West Telecomm, Inc.,*
 325 F.3d 1114 (9th Cir.2003) ...............................................................................................11

*Pinkard v. Wal–Mart,*
 No. 3:12–cv–02902–CLS, 2012 WL 5511039, at *2 (N.D.Ala. Nov. 9, 2012).....................13

*Ranwick v. Texas Gila, LLC* (D. Minn. 2014)
    37 F.Supp.2d 1053 ................................................................................................. 18

*Reardon v. Uber Technologies*
    (N.D. Calif. 2015) 115 F.Supp.3d 1090 ........................................................... 13, 16

*Roberts v. PayPal, Inc.,*
    No. C 12–0622 PJH, 2013 WL 2384242 (N.D.Cal. May 30, 2013) ...................... 13

*Ryabyshchuck v. Citibank (S. Dakota) N.A.*
    (S.D. Calif 2012) 2012 WL 5379143 ............................................................... 19, 20

*Satterfield v. Simon & Schuster, Inc.*
    (9th Cir. 2009) 569 F.3d 946 ............................................................................. 19

*Siding & Insulation Co. v. Alco Vending, Inc.,*
    (6th Cir. May 9, 2016) -- F.3d --, 2016 WL 2620507 ......................................... 21

*Steinhoff v. Star Media Co., LLC,*
    No. 13–cv–1750 (SRN/JSM), 2014 WL 1207804 (D.Minn. Mar. 24, 2014) ........ 13

*Van Patten v. Vertical Fitness, Inc.* (S.D. Calif. 2014)
    22 F.Supp.3d 1069 ............................................................................................... 13

**Other Authorities**

27 FCC Rcd. ................................................................................................................ 9, 21

28 U.S.C. § 2342 *et seq.* (the "Hobbs Act") ................................................................. 11

30 FCC Rcd. at 8029 ¶ 141 ...................................................................................... 12, 13

30 FCC Rcd. at 8030 ...................................................................................................... 13

45 C.F.R. § 160.103 ................................................................................................... 10, 12

47 C.F.R. § 64.1200(a)(2) ..................................................................................... 10, 11, 13

47 C.F.R. § 64.1200(f)(4) ............................................................................................... 18

47 U.S.C. § 226(b)(1)(A) ............................................................................................... 18

47 U.S.C. § 227(b)(1)(A)(iii) ................................................ 2, 9, 10, 11, 12, 18, 19, 20, 21

47 U.S.C. § 227(b)(3)(B) .................................................................................................. 2

7 FCC Rcd. 8752 ......................................................................................................... 9, 12

*GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling,*
    *Declaratory Ruling,* 29 F.C.C.R. 3442 (2014) ................................................... 20

*In re Rules and Regulations Implementing the TCPA,*
  7 FCC Rcd. 8752, 8759 (Oct. 16, 1992)..............................................................................9

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
  30 FCC Rcd. 7961, 8030 & n. 490 (July 10, 2015)("2015 Order") ...............................10, 12, 20, 22

*In the Matter of the Tel. Consumer Prot. Act of 1991,* Notice of Proposed Rulemaking,
  7 F.C.C.R. 2736, 2738 (1992) .........................................................................................19

*In the Matter of the Telephone Consumer Protection Act of 1991,*
  7 FCC Rcd 2736, ¶17 (1992)...........................................................................................18

*Statement of Cong. Edward Markey, Chair, House Telecom. & Fin. Subcommittee,*
  137 Cong. Rec. H 11307-01 (Nov. 26, 1991) ..................................................................18

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

**TO PLAINTIFF LINDA JACKSON AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 25, 2016, at 9:00 a.m. or as soon thereafter as counsel may be heard, in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, 15th floor, Courtroom F, defendant SAFEWAY INC. ("Safeway") will move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on all of the claims asserted against it by Plaintiff in the First Amended Complaint. Safeway's motion for summary judgment is supported by the First Amended Complaint on file in this action, the declarations of William F. Murphy, Brian Hille, Anna Truong, Heather Sigala, Charles E. Russo, Jr., Rhonda Burns, and Karen Bowlby, on this Notice of Motion and Motion for Summary Judgment and the following Opening brief, and on such other papers as may be filed in support of or in opposition to the motion.

By this motion, Safeway seeks entry of an Order granting its motion for summary judgment, and the entry of judgment in this action in Safeway's favor and against the sole-remaining Plaintiff, Linda Jackson, on each of the following, separate and independent grounds:

1. The undisputed material facts establish that Plaintiff gave her cell phone number to Safeway when she got her first flu shot on January 20, 2014, as well as on many, many other occasions both before and after that date, and never revoked or limited that consent at any time before commencing this action. Under well-established law, Plaintiff's provision of her cell phone number to Safeway constituted "prior express consent" for Safeway to make the flu shot reminder calls to that cell phone number in November 2014 and January 2015, a complete defense to Plaintiff's TCPA claims.

2. Safeway did not need Plaintiff's prior express consent to make the calls. The two prerecorded flu shot reminder calls about which Plaintiff complains are exempt from the TCPA because the undisputed material facts establish that they are "emergency" calls as defined by the Federal Communications Commission ("FCC") in its binding interpretation of the TCPA.

3. Obtaining Plaintiff's prior express consent to make prerecorded flu shot reminder calls to Plaintiff was not required of Safeway under the TCPA, because flu shot reminder calls are exempted from any prior consent requirement by the FCC's July 10, 2015 declaratory ruling, exempting certain healthcare calls not charged to the called party from the TCPA's prior consent requirements. That ruling that applies with equal force to this action.

## OPENING BRIEF IN SUPPORT OF DEFENDANT SAFEWAY INC.'S MOTION FOR SUMMARY JUDGMENT

## I. PRELIMINARY STATEMENT.[1]

Plaintiff LINDA JACKSON ("Plaintiff") alleges in her First Amended Complaint ("FAC") that defendant SAFEWAY INC. ("Safeway") made one or more prerecorded telephone calls to the cell phone Plaintiff uses, 510-213-XXXX, and that "at least one" of those calls "solicit[ed] Plaintiff Jackson to obtain a flu shot at her local Safeway." FAC ¶¶ 32-33. Plaintiff alleges that she "never consented to receive ATDS [automatic telephone dialing system] calls prompting her to obtain flu shots at her local Safeway," and that such flu shot reminder calls constitute violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii). FAC ¶¶ 34-35. Plaintiff seeks injunctive relief and statutory damages of $500 per flu shot reminder call (**First Cause of Action**, FAC ¶¶ 51-54), and enhanced damages of up to $1,500 per flu shot call under 47 U.S.C. § 227(b)(3)(B) because, Plaintiff contends, Safeway's violations of the TCPA were "knowing and/or willful" (**Second Cause of Action**, FAC ¶¶ 55-58). Although the FAC also alleges that Safeway made other ATDS and/or prerecorded telephone calls to her cell phone, Plaintiff's FAC challenges only Safeway's flu shot reminder calls as allegedly violating the TCPA (FAC ¶¶ 34-35; Murphy Decl. ¶ 3; see Joint Case Management Conference Statement filed June 9, 2016 (DKT # 49)). Safeway made only two prerecorded flu shot reminder calls to Plaintiff, one on November 6, 2014, and a second a January 9, 2015.

---

[1] This brief and the declarations and exhibits supporting this motion for summary judgment are being filed in redacted form in the public record, with the unredacted versions to be filed under seal pursuant to Local Rule 79-5 and the Protective Order on file in this action. Redacted information includes plaintiff's full cell phone number, identifying information such as her home addresses, and personal health information including prescription medications she has purchased at Safeway and documents reflecting medical conditions Plaintiff reported.

The undisputed material facts establish that Safeway is entitled to summary judgment on Plaintiff's TCPA claims, for three, separate and independent reasons.  First, Plaintiff gave her cell phone number to Safeway when she got her first flu shot on January 20, 2014, as well as on many, many other occasions both before and after that date, and never revoked or limited that consent at any time before commencing this action.  Under well-established law, Plaintiff's provision of her cell phone number to Safeway constituted "prior express consent" for Safeway to make the flu shot reminder calls to that cell phone number in November 2014 and January 2015, a complete defense to Plaintiff's TCPA claims.  Second, Safeway did not need Plaintiff's prior express consent to make the calls.  The two prerecorded flu shot reminder calls about which Plaintiff complains are exempt from the TCPA because the undisputed material facts establish that they are "emergency" calls as defined by the Federal Communications Commission ("FCC") in its binding interpretation of the TCPA.  Third, obtaining Plaintiff's prior express consent to make prerecorded flu shot reminder calls to Plaintiff's cell phone was not required under the TCPA, because flu shot reminder calls are exempted from any prior consent requirement by the FCC's July 10, 2015 declaratory ruling, exempting certain healthcare calls not charged to the called party from the TCPA's prior consent requirements.  That ruling that applies with equal force to this action.

## II.    SUMMARY OF UNDISPUTED MATERIAL FACTS

### A.    The Parties and Plaintiff's Claims.

Plaintiff is a resident of Oakland, California.  FAC ¶ 5; Plaintiff Deposition ["Pltf .Depo."] 10:23-11:25.[2]  Defendant Safeway is a Delaware corporation with its principal place of business in Pleasanton, California.  FAC ¶ 4.  In many of its retail stores, Safeway offers pharmacy services, such as filling its patients' prescriptions and providing its patients with immunizations.  FAC ¶¶ 1-2; 19-20.  As a pharmacy, Safeway is subject to the Health Insurance Portability and Accountability Act ("HIPAA").  Declaration of Brian Hille ("Hille Decl.") ¶ 2.

---

[2]  Excerpts from Plaintiff's deposition and Exhibits to that deposition are attached to the Declaration of William F. Murphy in Support of Safeway's Motion for Summary Judgment as Exhibit A.

Plaintiff has been a Safeway pharmacy patient for approximately seven years, going back to about early 2010. Pltf.Depo. 18:3-9. Plaintiff shops at the Safeway pharmacy in Safeway's Fruitvale Avenue store in Oakland, California, but also on occasion uses the pharmacy at Safeway's San Ramon, California store, near where she works. Plts.Depo. 19:15-20:8. Plaintiff fills and purchases prescriptions Safeway pharmacies several times a month. Hille Decl. ¶ 21 & Exh. Q.

510-213-XXXX is the cell phone number Plaintiff has used for about the last 10 years. She has not used any other cell phone number in that time. Pltf.Depo. 13:13-14:15. The carrier for her cell phone is T-Mobile. T-Mobil has been Plaintiff's carrier for about the last 10 years. Pltf.Depo. 15:6-12. Plaintiff's daughter, Robyn Parker, is the nominal subscriber to the T-Mobile service, but Plaintiff uses the cell phone and pays the bill for it each month. Pltf.Depo. 15:6-12.

Plaintiff recalled that when she first attempted to get a prescription filled at a Safeway pharmacy, Safeway pharmacy personnel asked her for her name and address. She believes at that time that she also gave the pharmacy her cell phone number, 510-213-XXXX. Pltf.Depo. 41:14-42:10. She had no discussions with anybody at Safeway as to why she was asked for her phone number (Pltf.Depo. 63:5-14); before the Complaint in this action was filed in September 2015, she never communicated to Safeway that she did not want to receive any prerecorded calls from Safeway. Pltf.Depo. 60:17-61:16; *Id*. at 62:20-63:14.

Plaintiff got seasonal flu shots at the San Ramon, California Safeway pharmacy on two occasions, on January 20, 2014, and on November 7, 2014. FAC ¶¶ 29-31; Hille Decl. ¶ 18 & Exh. I; Pltf.Depo. 20:10-22. On both occasions, Plaintiff completed and returned to Safeway a form that asked Plaintiff for her "home phone" by providing Safeway with her cell phone number, 510-213-XXXX, as opposed to a landline phone number she also had. Pltf.Depo. 31:18-34:6 & Exh. 5 [January 20, 2014]; *Id*. at 37:24-40:14 & Exh. 7 [November 7, 2014]; *Id*. at 13:13-14:10 [landline].

In addition, in early January 2014, Plaintiff gave her cell phone number to Safeway in two telephone conversations with representatives working in Safeway's Customer Support Center, revising the customer information in her Safeway Club Card profile. Pltf.Depo. 51:1-54:16; Bowlby Decl. ¶ 3 and Exh. A. Plaintiff later used that Club Card account to, among other things, access a 10% shopping discount coupon she received in connection with getting a flu shot at Safeway in November 2014. Burns

Decl. ¶ 3 & Exh. A.  In addition, at least one of Plaintiff's doctors supplied Plaintiff's cellular telephone number to Safeway pharmacies in connection with ordering prescription medications on behalf of Plaintiff on April 11, 2014.  Truong Decl. ¶ 2 & Exh. A.

**B.      Flu Shots, and Why They Are Important.**

Flu shots are vaccines and are among the medications offered by Safeway pharmacies to its pharmacy patients.  Flu shots are prescription medications.  A Safeway pharmacist does not usually need a written or verbal prescription from a physician to provide a flu shot to a Safeway patient.  Safeway pharmacists are also trained to advise patients about the importance of getting yearly flu shots to protect their health, the health of their loved ones, and the public health generally.  Hille Decl. ¶ 3.  Safeway supports and follows the recommendation of the United States Center for Disease Control and Prevention ("CDC") that everyone six months of age or older get a flu vaccine every year.  The CDC is regarded as the leading authority on disease control generally, and the importance of flu shots, specifically.  Hille Decl. ¶ 4.  Flu vaccinations are needed every year because the flu viruses are constantly changing.  Hille Decl. ¶ 5.

It is particularly important that certain high-risk individuals get an annual flu shot. Individuals in the high risk groups include: children under 5; adults over 65; pregnant women; nursing home residents; and individuals with health conditions such as asthma, lung disease, cancer, heart disease, diabetes, and kidney or liver disorders.  Hille Decl. ¶ 7.  Flu shots can also reduce the risk of serious flu outcomes, like death and hospitalizations, for persons in high risk groups.  For example, a CDC study has shown that the flu vaccine reduced children's risk of flu-related pediatric intensive care unit admission by 74% during the 2010-2011 and 2011-2012 flu seasons.  Further, the flu vaccination was associated with a 71% reduction in hospitalizations among adults 50 years of age and older during the 2010-2011 flu season.  The flu vaccine was also associated with lower rates of cardiac events among people with heart disease, a 79% reduction in hospitalizations among people with diabetes, a 52% reduction in hospitalizations among people with chronic lung disease, and was 92% effective in preventing hospitalization of infants for flu when given to pregnant women.  Hille Decl. ¶ 8 & Exh. D.

[lines 1-6 redacted]

However, even healthy individuals can suffer serious health consequences, including death, from the flu, especially considering that the virulence and severity of the flu varies season to season. The virus is spread from person to person, mainly when people with the flu cough, sneeze, or talk. The virus can reach people who are up to six feet away. Accordingly, it is also important for healthy, non "at risk" adults to get vaccinated against the flu virus because they could spread it to others, including those in high-risk populations. Hille Decl. ¶¶ 9-13. Advising and encouraging patients to receive a flu shot is a necessary and important part of providing preventative healthcare services to pharmacy patients, and the public at large. Hille Decl. ¶ 14.

### C. Safeway's Flu Shot Reminder Program

During every flu season from the 2011-2012 flu season through January 2015 (the 2014-2015 flu season), Safeway, with the assistance of third party vendors, placed prerecorded flu shot reminder calls to its existing pharmacy patients who Safeway believed met all of the following criteria: (a) they had received flu shots in the previous year's flu season, (b) according to Safeway's records, they had not yet received a flu shot at a Safeway pharmacy by a certain cutoff date during the current season, and (c) they had previously provided the Safeway pharmacy with a telephone number at which they could be reached. Hille Decl. ¶¶ 15-17.

Annual flu shot reminder calls are a subspecies of the more frequently-made prerecorded prescription pick-up reminder calls. Prescription pick up reminder calls are calls placed by Safeway to its pharmacy patients when a prescription medication ordered for a patient by the patient's physician has been filled but not yet been picked up by the patient. Prescription pick-up reminder calls and flu shot reminder calls address identical issues: reminding Safeway pharmacy patients that

1  prescription medication or services important to their health and safety are ready for them to pick up

2  or receive.  Hille Decl. ¶ 11.

3      **D.    Safeway's Two Prerecorded Flu Shot Reminder Calls to Plaintiff's Cell Phone.**

4      Plaintiff recalls getting "at least one" flu shot reminder call from Safeway in November 2014.

5  Pltf.Depo. 22:3-24:13 & Exh. 3.  Plaintiff does <u>not</u> recall receiving any flu shot reminder call from

6  Safeway at any time prior to November 6, 2014.  Pltf.Depo. 24:14-25:4. The T-Mobile records

7  subpoenaed by her counsel, dating back to May 2014, do not reflect any flu shot reminder calls from

8  Safeway prior to November 6, 2014.  Murphy Decl. ¶ 3 & Exh. B; Pltf.Depo. 28:6-24 & Exh. 4,

9  Response to Interrogatory No. 8.  Plaintiff also does not recall receiving any flu shot reminder calls

10  other than the two that are reflected in the T-Mobile records referenced in her interrogatory

11  responses.  Pltf.Depo. 28:4-30:12 & Exh. 4.  Safeway's flu shot records, extending back to 2011,

12  reflect no flu shot reminder calls were made to Plaintiff other than the November 6, 2014 and January

13  9, 2015 calls.  Hille Decl. ¶¶ 15-18.  The undisputed material facts thus establish that this case is

14  about two and only two prerecorded flu shot reminder calls made by Safeway to the phone number

15  Plaintiff had given on numerous occasions to Safeway, (510) 213-XXXX.

16      Plaintiff received a flu shot at Safeway's San Ramon, California pharmacy on January 20,

17  2014.  As part of getting the flu shot, Plaintiff completed a "Consent and Release" form in which

18  provided Safeway with some medical background information and gave Safeway her cellular

19  telephone number (510) 213-XXXX.  There were no discussions about why Plaintiff needed to

20  provide her telephone number as part of getting the flu shot. Pltf.Depo. 31:18-34:6 & Exh. 5.

21      In the Fall of 2014, Safeway contracted with MarkeTouch Medic, Inc. ("MarkeTouch"), a

22  provider of communications solutions, to help Safeway reach out to its existing pharmacy patients to

23  remind them to get a flu shot for the new flu season (2014-2015) through the use of prerecorded

24  telephone calls.  Russo Decl. ¶¶ 2-3.  On November 6, 2014, on November 7, 2014, and again on

25  January 9, 2015, Safeway placed prerecorded flu shot reminder calls to current Safeway pharmacy

26  patients whom Safeway believed met the criteria set forth in Section II(C), *supra*.  Safeway made two

27  such prerecorded flu shot reminder calls to Plaintiff:  the first on November 6, 2014, at about 3:18

28

P.M.; and, a second on January 9, 2015, at about 3:02 P.M.[3]  Russo Decl. ¶ 6 & Exh. C; Hille Decl. ¶¶ 15-18.

The MarkeTouch records provided to Safeway reflect that Plaintiff herself did not answer Safeway's November 6, 2014 flu shot reminder call.  Instead, the call rolled over to Plaintiff's cell phone voicemail box, where the following prerecorded message was left for Plaintiff:

> Hello, this is a flu shot reminder call from your Safeway Pharmacy.  Because you previously received a flu shot from Safeway you already know the best way to prevent the flu is by being vaccinated each year.  If you haven't already received your flu shot – now is the time!  The CDC is recommending that everyone over the age of 6 months receive their flu shot this flu season.  Flu Shots are now available from your Safeway community Pharmacists, no appointment necessary, while stocks last.  To opt-out of future reminders, please call 866-284-6198.  Thank you, goodbye.[4]

Hille Decl. ¶ 19 & Exh. J.

The very next day, November 7, 2014, Plaintiff received a flu shot at the Safeway pharmacy in Safeway's San Ramon, California store.  Hille Decl. ¶¶ 25 & Exh. N; 28 & Exh. Q.  At that time, Plaintiff filled out another Safeway consent and release form in connection with that flu shot, again providing Safeway with medical background information and, when asked to supply a "Home

---

[3]    The T-Mobile records subpoenaed by Plaintiff's counsel show the times of calls made and received in "Coordinated Universal Time" or "UTC" [formerly known as "Greenwich Mean Time"].  Thus, for calls made in November 2014 and January 2015, the local time the calls were made would be 9 hours behind the Coordinated Universal Time reflected on the T-Mobile records.  The November 6, 2014 prerecorded call was recorded in the T-Mobile records as having been placed on November 7, 2014 at 00:18:03 Coordinated Universal Time, or November 6, at 3:18:03 P.M. California time.  The T-Mobile records of the January 9, 2015 call reflect that it was placed at 00:02:39 on January 10, 2015 Coordinated Universal Time, or 3:02:39 P.M. on January 9, 2015, California time.  Murphy Decl. ¶ 3 & Exh. C.

[4]    Plaintiff testified that she doesn't recall whether or not the CDC's recommendation was mentioned in the flu shot reminder calls she received from Safeway.  Plaintiff also could not recall whether she listened to the Safeway flu shot reminder calls from beginning to end, or hung up on them before they were concluded.  She also doesn't remember whether there was, as part of the prerecorded message, an opportunity for her to opt out of future flu shot reminder calls, but her recollection is not sufficiently strong that she would deny that an opt out was part of the prerecorded flu shot call – she just doesn't remember. Pltf.Depo. 46:5-49:3. Safeway's business records establish that all prerecorded flu shot reminder calls made during November of 2014 and January of 2015 provided recipients, including Plaintiff, with an opportunity to opt-out of future calls.  Hille Decl. ¶ 19 & Exh. J.

Phone" number, gave Safeway her cell phone number, 510-213-XXXX. Pltf.Depo. 37:24-39:3 & Exh. 7; Hille Decl. ¶ 24 & Exh. M.

On January 9, 2015, Safeway placed a second prerecorded flu shot reminder call to Plaintiff's telephone number, 510-213-XXXX. Plaintiff also did not answer that call, and it forwarded to Plaintiff's phone's voicemail box, leaving a prerecorded message identical to the one left for Plaintiff in November 2014. Hille Decl. ¶ 18 & Exh. I; *Id.* at ¶ 20 & Exh. J.

Plaintiff admitted that prior to the filing of the Complaint in this action, she never said or did anything to communicate to Safeway that she didn't want to receive any more flu shot reminder calls. Pltf.Depo. 60:17-61:16. Plaintiff also never said or did anything to attempt to communicate to anybody at Safeway that she didn't want to receive any prerecorded calls of any kind or nature from Safeway. Pltf.Depo. 62:20-63:3. MarkeTouch's records, and the records of the vendor preceding MarkeTouch, Call-Em-All, reflecting the telephone numbers called to deliver Safeway prerecorded flu shot reminders from September 2011 through January 2015 show that Plaintiff's telephone number, 510-213-XXXX, was on the list of telephone numbers to be called only during the 2014-2015 flu shot reminder call campaign; Plaintiff's cell phone number was not on the list of phone numbers Safeway prepared and forwarded to its outside vendor, Call-Em-All, for earlier flu shot reminder call campaigns. Hille Decl. ¶ 18.

III.    **SAFEWAY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TCPA CLAIMS.**

A.    **Plaintiff Gave Safeway Prior Express Consent to Call Her Cell Phone.**

1.    **The FCC's Standard for Prior Express Consent Under the TCPA**

Plaintiff gave Safeway her prior express consent to call her cell phone number. This undisputed fact is sufficient for summary judgment in favor of Safeway.

The Federal Communications Commission ("FCC") held, prior to October 16, 2013, that a consumer has given requisite prior express consent under the TCPA to be called by a business if he or she has given phone number to that business. The FCC held that giving the number constituted sufficient prior express consent under the TCPA to be called at that phone number with prerecorded

or auto-dialed call requiring prior express consent. *In re Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8759 (Oct. 16, 1992)["the 1992 Order"].

In 2012, the FCC modified the Rule with respect to certain telemarketing calls to wireless telephone numbers. See 2012 Order, 27 FCC Rcd. at 1852-1856; 47 C.F.R. § 64.1200(a)(2). Effective October 16, 2013, the FCC introduced a heightened "prior express **written** consent" requirement for some, **but not all**, automated or prerecorded calls made to a cellular phone that "include[] or introduce[] an advertisement or constitute[] telemarketing". 47 C.F.R. § 64.1200(a)(2). However, the FCC's new "prior express **written** consent" requirement does <u>not</u> apply to Safeway's prerecorded flu shot reminder calls to Plaintiff. That is because the new rule contains an **exception** for "a call that delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103." A call that delivers a "'health care' message" continues to be subject, at most, to the requirement of "prior express consent".[5]

The FCC's new regulation, effective October 16, 2013, provides that:

No person or entity may * * *

(2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system of an artificial or prerecorded voice, to [cell phones], **other than** a call made with the prior express written consent of the called party * * * **or a call that delivers a "health care" message** made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

47 C.F.R. § 64.1200(a)(2) [emphasis supplied]. Under this rule, it is clear that a "telemarketing call" or an "advertising call" delivering a "'health care' message" is <u>not</u> subject to the new requirement of

---

[5] This is not at all to say that all health care messages are subject to some prior consent requirement. Safeway's flu shot reminder calls deliver health care messages, but they also constitute emergency calls exempt from the TCPA; in addition, flu shot reminder calls fall within the regulatory "safe harbor" exception for healthcare calls recognized by the FCC in July 2015, discussed below, requiring no prior consent of any kind. *See* Sections III(B) and (C), *infra*. The provisions of 47 C.F.R. § 64.1200(a)(2) simply provide that calls delivering health care messages that *do* need some sort of prior consent require, at most, "prior express consent" and not "prior express written consent".

"prior express **written** consent," even if the call is construed as including advertising or

telemarketing.[6]  In its 2015 Order, the FCC further confirmed that for healthcare messages where

only prior express consent is required, the "provision of a phone number to a healthcare provider

constitutes prior express consent for healthcare calls subject to HIPAA by a HIPAA-covered entity

and business associates acting on its behalf * * *."  2015 Order, 30 FCC Rcd at 8029 ¶ 141.[7]

> **2.**      **The Flu Shot Reminder Call(s) At Issue Here Deliver a "Health Care Message" as Defined in 47 C.F.R. § 64.1200(a)(2) and Are Therefore Not Subject to a "Prior Express Written Consent" Requirement.**

The FCC excepts from any requirement of "prior express *written* consent" calls "that deliver[]

a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as

those terms are defined in the HIPAA Privacy Rule, 45 C.F.R. 160.103."  47 C.F.R. § 64.1200(a)(2).

The content of the prerecorded messages sent to Plaintiff's cell phone confirms that they delivered a

"heath care" message:

> Hello, this is a flu shot reminder call from your Safeway Pharmacy.  Because you
> previously received a flu shot from Safeway you already know the best way to
> prevent the flu is by being vaccinated each year.  If you haven't already received
> your flu shot – now is the time!  The CDC is recommending that everyone over the
> age of 6 months receive their flu shot this flu season.  Flu Shots are now available

---

[6]     Safeway understands Plaintiff's position to be that if a prerecorded call contains telemarketing or advertising in addition to the "'health care message," the exception to the "prior express written consent" requirement for "health care" messages does not apply.  Plaintiff's contention that the *exception* provided by 47 C.F.R. § 64.1200(a)(2) from the "prior express written consent" requirement for "health care" messages applies only to calls that contain no advertising or telemarketing does not describe an exception at all, because a call that contains no advertising or telemarketing is not subject to the new "prior express written consent" rule in the first place.  Using Plaintiff's logic, the *exception* to the rule applies only when the rule itself doesn't even apply.  That is an incorrect and illogical interpretation of the FCC's regulation.  A plain reading of the regulation shows just the opposite:  calls that contain telemarketing but which also contain a healthcare message are at most subject only to the prior express consent rule.

[7]     The courts are bound by the FCC's interpretations of the TCPA, unless those interpretations are invalidated by a Court of Appeals in an appropriate proceeding challenging the FCC's rulemaking.  *See* 28 U.S.C. § 2342 *et seq.* (the "Hobbs Act"); *Leckler v. CashCall* (N.D. Calif. 2008) 2008 WL 5000528 at *3, vacating *Leckler v. CashCall* (N.D.Calif. 2008) 554 FSupp.2d 1025; *Pac. Bell v. Pac–West Telecomm, Inc.,* 325 F.3d 1114, 1125 (9th Cir.2003); and *Olney v. Job.com, Inc.,* No. 1:12–CV–01724–LJO, 2014 WL 1747674, at *4 (E.D.Cal. May 1, 2014).

from your Safeway community Pharmacists, no appointment necessary, while stocks last.  To opt-out of future reminders, please call 866-284-6198.  Thank you, goodbye.

The FCC regulations look to HIPAA regulations to define a "'health care' message" for purposes of the exception.  47 C.F.R. § 64.1200(a)(2) ["as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103"].  HIPAA broadly defines "healthcare" to include "care, services, or supplies related to the health of an individual."  45 C.F.R. § 160.103 [defining health care"].  The HIPAA Privacy Rule also defines "health care" to include the "Sale or dispensing of a drug * * * in accordance with a prescription."  45 C.F.R. § 160.103 [defining "health care"].  This, of course, is precisely what the two calls in question are about.  The flu shot reminder calls at issue here deliver a health care messages concerning "services * * * related to the health of an individual" and the "dispensing of a drug * * * in accordance with a prescription.".  A call advising patients who received a flu shot previously that flu shots are available again for the current flu season unquestionably delivers a "'health care' message".

### 3. The Flu Shot Reminder Calls Were Made by a "Covered Entity" Under HIPAA, With the Assistance of a "Business Associate."

As a pharmacy, Safeway is a healthcare provider, and is thus a "covered entity" subject to HIPAA.  Hille Decl. ¶ 2; see 45 C.F.R. § 160.103.  The outside vendor who provided the platform through which Safeway placed prerecorded flu shot reminder calls to Plaintiff was MarkeTouch Media Inc. ("MarkeTouch"), a "business associate" of Safeway under HIPAA who had signed a business associate agreement with Safeway.  Hille Decl. ¶ 18; Russo Decl. ¶ 2 & Exh. B.

### 4. Plaintiff Gave Safeway Prior Express Consent to Call Plaintiff's Cell Phone.

The undisputed material facts establish that Safeway had prior express consent from Plaintiff to call Plaintiff's cell phone with prerecorded flu shot reminder calls.

**a.    Plaintiff Gave Safeway Prior Express Consent to Call Her on Her Cell Phone by Providing Her Cell Phone Number to Safeway Repeatedly in Connection with Flu Shots and Other Pharmacy Transactions.**

The FCC's interpretation of the TCPA holds that the "provision of a phone number to a healthcare provider constitutes prior express consent for healthcare calls subject to HIPAA by a HIPAA-covered entity and business associates acting on its behalf." 2015 Order, 30 FCC Rcd. at 8029 ¶ 141.  In its 2015 Order, the FCC reiterated the longstanding rule that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given." *Id.*; see also 1992 Order, 7 FCC Rcd. 8752, 8769 ¶ 31 ["Persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate [TCPA rules] by calling a number which was provided as one to which the called party wishes to be reached"].  Prior written consent is not required.  See 2015 Order, 30 FCC Rcd. at 8030, n. 481; see also 47 C.F.R. § 64.1200(a)(2).

Courts have consistently enforced the FCC's rule that giving one's cell phone number constitutes prior express consent for calls to that number, such as the healthcare-related calls at issue here.  See, e.g., *Murphy v. DCI Biologicals Orlando, LLC* (11th Cir. 2015) 797 F.3d 1302, 1308 [a patient gave prior express consent to be called by providing his cell phone number before donating blood].  In *Reardon v. Uber Technologies* (N.D. Calif. 2015) 115 F.Supp.3d 1090, 1097, Judge Tigar confirmed recently that "any plaintiff who provided her phone number as part of the Uber application process consented to receive Uber's texts about becoming an Uber driver."[8]

---

[8]    As noted in the *Uber* decision, "the vast majority of cases to address the issue have held that a telephone customer who provides her number to another party consents to receive calls or texts from that party. *See, e.g., Van Patten* [v. *Vertical Fitness, Inc.* (S.D. Calif. 2014) 22 F.Supp.3d [1069] at 1073–77; *Baird v. Sabre Inc.,* 995 F.Supp.2d 1100, 1106 (C.D.Cal.2014); *Emanuel v. L.A. Lakers, Inc.,* No. CV 12–9936–GW(SHx), 2013 WL 1719035 (C.D.Cal. Apr. 18, 2013); *Roberts v. PayPal, Inc.,* No. C 12–0622 PJH, 2013 WL 2384242 (N.D.Cal. May 30, 2013); *Olney v. Job.com, Inc.,* No. 1:12–CV–01724–LJO, 2014 WL 1747674, at *5 (E.D.Cal. May 1, 2014); *Pinkard v. Wal–Mart,* No. 3:12–cv–02902–CLS, 2012 WL 5511039, at *2 (N.D.Ala. Nov. 9, 2012); *Murphy v. DCI Biologicals Orlando, LLC,* No. 6:12–cv–1459–Orl–36KRS, 2013 WL 6865772 (M.D.Fla. Dec. 31, 2013); *Steinhoff v. Star Media Co., LLC,* No. 13–cv–1750 (SRN/JSM), 2014 WL 1207804 (D.Minn. Mar. 24, 2014); *Andersen v. Harris & Harris,* No. 13–CV–867–JPS, 2014 WL 1600575 (E.D.Wis. Apr. 21, 2014)." *Uber, supra,* 115 F.Supp.3d at 1097.

"Express consent can be demonstrated when the called party gives her wireless number to the person initiating the call 'without instructions to the contrary.'" *Id.* at 1098, citing the 2015 FCC Order at ¶ 52. Plaintiff gave her cellular telephone number (510) 213-XXXX to Safeway on or about January 20, 2014, when she received a flu vaccination at a Safeway pharmacy in San Ramon, California, and there were no "instructions to the contrary." Specifically, Plaintiff provided her cell phone number in response to a blank on the form asking for a "Home Phone." There was no discussion as to why Safeway asked for the phone number, and Plaintiff never communicated or attempted to communicate to Safeway, then or at any time before filing this lawsuit, that she did not want to receive prerecorded flu shot reminder calls, or prerecorded calls of any kind. Plaintiff Depo. at 60:1-61:16; 62:20-63:4. And as the Eleventh Circuit in *Mais v. Gulf Coast Collection Bureau* (11th Cir. 2014) 768 F.3d 1110, 1119, 1122 noted, "A patient filling out a form from a healthcare provider may very well expect to be contacted about his health and treatment."

Plaintiff may argue that she did not expressly consent to receiving such calls merely by virtue or providing her cell phone number, because she allegedly thought she had no choice but to fill out the form, including providing a "home telephone," if she wanted to get a flu shot. But that argument misses the point: the provision of a phone number does not have to be without consideration to make it voluntary, or to find that it constitutes prior express consent to be called at that number. As one court observed, disposing of a similar argument, Plaintiff's "act of providing her cellphone number was a voluntary act; she was not forced to book a flight on Hawaiian Airlines. *Cf. Saunders v. NCO Financial Systems, Inc.*, 910 F.Supp.2d 464, 465–67 (E.D.N.Y.2012) (where PACER system required plaintiff to provide a contact telephone number to obtain an account, plaintiff's act was still voluntary and constituted express consent to be contacted)." *Baird v. Sabre Inc.* (C.D. Cal. 2014) 995 F. Supp. 2d 1100, 1106-07, aff'd (9th Cir. 2016) 636 F. App'x 715.

In this instance, the forms Safeway asked Plaintiff to complete as part of the flu shot process in January 2014 and November 2014 did not even demand a *cell* phone number – they simply asked for a "home phone". Plaintiff, who had a landline as well as her cell phone number (Pltf.Depo. 13:13-14:10), elected to provide her cell phone number in response to this request. Pltf.Depo. 31:21-34:6 & Exh. 5; *Id.* at 37:24-39:2 & Exh. 7. That constituted prior express consent by Plaintiff to be

1    contacted by Safeway at that cell phone number as a matter of law.[9]  For example, in *Murphy v. DCI*

2    *Biologicals Orlando, LLC*, *supra,* 797 F.3d at 1308, a Plaintiff's "complaint alleged that he provided

3    his cell phone number on DCI's New Donor Information Sheet, which he completed before giving

4    blood plasma.  [Plaintiff] gave his prior express consent to receive auto dialed calls or text messages,

5    such as the two text messages he received, by providing his cell phone number, which was not

6    required under federal law for the donation of blood products.  The form neither requested a cell

7    phone number specifically nor indicated that providing a cell phone number was a prerequisite to

8    donating blood plasma.  Under § 227(b)(1)(A) and the FCC's interpretation of prior express consent,

9    [Plaintiff's] provision of his cell phone number constituted his express consent to be contacted by

10   DCI at that number."  Just so here.

11          But that's hardly the end of it.  Plaintiff also testified that she provided her cellular telephone

12   number to Safeway's pharmacy as early as 2010 in connection with obtaining prescription

13   medications, without imposing any limitations of any kind.  Pltf.Depo. 41:14-42:10; *Id.* 63:5-14.

14   And on or about January 3, 2014, Plaintiff also gave her cell phone number to Safeway in two

15   telephone conversations with representatives working at Safeway's Customer Support Center, in the

16   course of revising the customer information reflected in her Safeway Club Card profile.  Pltf.Depo.

17   50:24-54:16; Bowlby Decl. ¶ 3 & Exh. A.  In addition, on April 11, 2014, one of Plaintiff's doctors,

18   acting on Plaintiff's behalf in ordering prescription medication for Plaintiff's use, supplied Plaintiff's

19   cellular telephone number to Safeway pharmacies in connection with ordering those prescriptions.

20   Truong Decl. ¶ 2 & Exh. A.

21          And it goes on.  On or about January 20, 2014, the same day Plaintiff got her first flu shot at a

22   Safeway pharmacy, Plaintiff signed an electronic version of Safeway's Notice of Privacy Practices,

23   which provides, among other things, Jackson's acknowledgement of Safeway's policy that:

24          "PHI [Personal Health Information] is information about you, including
             demographic information, that can be reasonably used to identify you and that
25           relates to your past, present, or future physical or mental health or condition, the

26   _____

27   [9]    The provision of Plaintiff's cell phone number by Plaintiff to Safeway in November 2014 is
     further evidence that Plaintiff had given Safeway express prior consent to contact her on her cell
28   phone for flu-shot and pharmacy-related purposes in January 2015.

provision of related health care services to you or the payment for that care. This Notice tells you about the ways in which we may collect, use and disclose your PHI to carry out treatment, payment or health care operations and for other specified purposes that are permitted or required by law. Your rights concerning your PHI are also discussed in this Notice. HOW WE MAY USE AND DISCLOSE YOUR PHI. We may use and disclose your PHI without your authorization for purposes of payment, health care operations and treatment. Examples of these types of uses and disclosures include: * * * * Health Care Operations. We use and disclose your PHI in order to perform our administrative activities, including data management and customer service. Example: ***The pharmacy may use information in your health record to*** monitor the performance of the pharmacists providing treatment to you and to improve quality and effectiveness; contact you to provide refill reminders; describe or recommend treatment alternatives; and ***offer information about health-related benefits and services that may be of interest***." (Hille Decl. ¶ 27 & Exhs. O and P [emphasis supplied]; Sigala Decl. ¶ 3 & Exhs. A-C).

Safeway's prerecorded flu shot reminder calls to Plaintiff in November 2014 and January 2015 were nothing if not an offer of "information about health-related benefits and services that may be of interest" to Plaintiff. The prerecorded flu shot calls provided Plaintiff with information about the availability and desirability of flu shots. And Safeway correctly concluded that such information "may be of interest" to Plaintiff: After all, Plaintiff had gotten a flu shot the previous flu season.

Plaintiff also signed earlier acknowledgments of Safeway's Notice of Privacy Practices on October 11, 2013 and April 9, 2012, at Safeway' store on Fruitvale Avenue in Oakland, California (Sigala Decl. ¶ 3 & Exh. A-C). In both of those earlier acknowledgments, Plaintiff again acknowledged that Safeway would use her personal health information, which includes such information as her cell phone number as well as her medical information to "offer information about health-related benefits and services that may be of interest." *Mais v. Gulf Coast Collection Bureau, Inc.* (11th Cir. 2014) 768 F.3d 1110, 1125 [patient's telephone number included within term "health information"]; *Baisden v. Credit Adjustments, Inc.* (6th Cir. 2016) 813 F.3d 338, 347 [same]).

"Prior express consent is a complete defense to Plaintiffs' TCPA claim." *Reardon v. Uber Technologies, Inc.*, *supra*, 115 F.Supp.3d at 1097. The undisputed material facts establish that on numerous occasions Plaintiff gave Safeway her cell phone number as a number at which she could be contacted. Safeway did not obtain Plaintiff's cellular phone number from a vendor or a search, or from any source other than Plaintiff Linda Jackson, or someone acting on her behalf such as her other health provider, in connection with treatment or prescription medication sought from Safeway. Hille

Decl. ¶ 16.  The undisputed material facts establish as a matter of law that Plaintiff gave Safeway prior express consent to call her on her mobile phone with the two flu shot reminder calls.

b.     **The Flu Shot Reminder Calls Are Within the Scope of the Prior Express Consent Provided by Plaintiff Jackson.**

In Ruling 15-72, the 2015 Opinion, the FCC stated that calls made to consumers and patients with prior express consent also had to be within the "scope" of the prior express consent given.  The FCC explained that "[b]y 'within the scope of consent given, and absent instructions to the contrary,' we mean that the call must be closely related to the purpose for which the telephone number was originally provided.  For example, if a patient provided his phone number upon admission to a hospital for scheduled surgery, then calls pertaining to that surgery or follow up procedures for that surgery would be closely related to the purpose for which the telephone number was originally provided."  2015 Opinion at n. 474.

In this case, among many other instances, Plaintiff provided Safeway with her cell phone number on two occasions – in January 2014, and again in November 2014 – in connection with receiving a flu shot at a Safeway pharmacy.  The prerecorded flu shot reminder calls made by Safeway to Plaintiff were not just "closely related to the purpose for which the telephone number was originally provided" – they arose out of *identical* circumstances:  a cell phone number given by Plaintiff to Safeway in connection with Plaintiff's getting a flu shot in January 2014 was used the very next flu season to remind Plaintiff that it was time for her to get another flu shot.

Moreover, in acknowledging Safeway's pharmacy privacy policies in 2012, 2013, and 2014, Plaintiff acknowledged that Safeway would be using her personal health information, which included her cell phone number, to "offer information about health-related benefits and services that may be of interest."  Safeway's flu shot reminder calls easily fall within the scope of "offer[ing] information about health-related benefits and services that may be of interest" to Plaintiff.  The flu shot reminder calls also fall within the scope of the consent Plaintiff gave when she (and persons acting on her behalf, such as her doctor) provided her cell phone number, on numerous occasions, to Safeway's pharmacy in connection with filling and collecting prescription medications.  Safeway's pharmacy obtained Plaintiff's phone number in connection with health-related transactions (i.e., prescription

1  drugs), and used the phone number to contact plaintiff about health-related matters (the availability

2  and desirability of prescription flu shots).

3      Plaintiff may argue that giving her cell phone number to Safeway did not amount to consent

4  to be" robo-called" by Safeway – in essence, a "scope of consent" argument asserting that although

5  Plaintiff may have consented to be contacted by Safeway at that cell number by a human being, she

6  did not consent to be contacted by pre-recorded messages.  That argument, too, has been considered

7  and rejected.  "The thrust of the FCC's rulings is that a person need not specifically consent to be

8  contacted using an auto-dialer or artificial or prerecorded voice.  Rather, a person who knowingly

9  provides his telephone number to a creditor in connection with a debt is agreeing to allow the creditor

10  to contact him regarding his debt, regardless of the means."  *Ranwick v. Texas Gila, LLC* (D. Minn.

11  2014) 37 F.Supp.2d 1053, 1057-58.

**B.     Safeway Did Not Need Any Consent from Plaintiff to Make Flu Shot Reminder Calls to Plaintiff's Cell Phone.**

**1.     The Flu Shot Reminder Calls Are Exempt from the TCPA as Emergency Calls.**

15      The TCPA did not require Safeway to obtain prior express consent in order to make the two

16  prerecorded flu shot reminder calls to Plaintiff's cell phone.  The two flu shot reminder calls at issue

17  here are exempted entirely from the TCPA as "emergency calls."

18      In enacting the TCPA, Congress provided an express exception for calls "made for emergency

19  purposes."  47 U.S.C. § 226(b)(1)(A).  The legislative history of the TCPA shows that Congress

20  intended "emergency purposes" to be interpreted "broadly rather than narrowly."  *See in the Matter of*

21  *the Telephone Consumer Protection Act of 1991,* 7 FCC Rcd 2736, ¶17 (1992); *see also Statement of*

22  *Cong. Edward Markey, Chair, House Telecom. & Fin. Subcommittee,* 137 Cong. Rec. H 11307-01

23  (Nov. 26, 1991) (discussing broad application of the "emergency purposes" exception).  Congress

24  delegated authority to the FCC to define the term "emergency purposes."  137 Cong. Rec. S18781-

25  02, 1991 WL 252592 at *18784 (Nov. 21, 1991) ["The FCC must determine what constitutes an

26  emergency purpose."].  Consistent with that Congressional mandate, the FCC's broad definition of

27  "emergency purposes" includes "health" and "safety" messages, and is not limited to sudden

28

catastrophic events: "The term 'emergency purposes' means calls made necessary in *any situation affecting the health* and safety of consumers." 47 C.F.R. § 64.1200(f)(4) (emphasis added).

Safeway's flu shot reminder calls are "calls made necessary in any situation affecting the health and safety of consumers" and thus are "emergency calls" exempt from the TCPA and its requirement of prior express consent. 47 C.F.R. § 64.1200(f)(4). The conclusion that Safeway's flu shot reminder calls are "necessary in [a] situation affecting the health * * * of consumers" within the meaning of 47 C.F.R. § 64.1200(f)(4) is consistent with Congress's and the FCC's admonition that the term "emergency" should be interpreted "broadly rather than narrowly," and includes "situations in which it is in the public interest to convey information to consumers concerning health and safety, whether or not the event was anticipated or could have been anticipated." *In the Matter of the Tel. Consumer Prot. Act of 1991*, Notice of Proposed Rulemaking, 7 F.C.C.R. 2736, 2738 (1992). Safeway pharmacies' flu shot reminder calls are a necessary step to protect the health and welfare of its patients, and the health and welfare of the public at-large, by properly and timely reminding Safeway pharmacy patients to get an annual flu shot.

The conclusion that the prescription pick-up reminder calls are "emergency calls" within the meaning of the FCC regulations implementing the TCPA is also consistent with the Ninth Circuit's determination that "the purpose and history of the TCPA indicate that Congress was trying to prohibit use of Automatic Telephone Dialing Systems in a manner that would be an invasion of privacy." *Satterfield v. Simon & Schuster, Inc.* (9th Cir. 2009) 569 F.3d 946, 954. Courts in the Ninth Circuit "broadly recognize that not every text message or call constitutes an actionable offense; rather, the TCPA targets and seeks to prevent 'the proliferation of intrusive, nuisance calls.'" *Ryabyshchuck v. Citibank (S. Dakota) N.A.* (S.D. Calif 2012) 2012 WL 5379143, at *2 [quoting *Mims v. Arrow Financial Services, LLC* (2012) 132 S.Ct. 740, 744]. The courts have declared that "[c]ontext is indisputably relevant to determining whether a particular call is actionable [under the TCPA]," *Ryabyshchuck*, supra, 2012 WL 5379143 at *3, and that application of statutory liability for any given call must be done with a "'common sense' approach." *Friedman v. Massage Envy Franchising, LLC* (C.D. Calif. 2013) 2013 WL 3026641, at *4 [quoting *Chesbro v. Best Buy Stores, L.P.* (9th Cir. 2012) 705 F.3d 913, 918].

1    The application of common sense dictates that flu shot reminder calls are not within the scope

2    of invasive or "nuisance" calls Congress sought to curtail. Pharmacies which pro-actively remind

3    their patients to get immunizations universally recommended by a wide array of healthcare

4    professionals should be applauded, not sued.

5    Although Safeway did not attempt to select only "high risk" patients to receive flu shot

6    reminder calls – after all, flu shots help everybody, high risk or not, and even flu shots received by

7    those not in a high risk group still benefit those in high risk groups by reducing their exposure to the

8    virus in the general population – Plaintiff here advised Safeway that ████████████████████

9    ████████████████████████████████████████████████████ Calls reminding ████████

10   ██ Plaintiff of the benefits of getting an annual flu shot and the availability of such immunizations at

11   Safeway are without doubt "calls made necessary in any situation affecting the health and safety" of

12   Plaintiff and the general public. As the FCC has stated, "Congress did not expect the TCPA to be a

13   barrier to normal, expected, and desired business communications." *GroupMe, Inc./Skype*

14   *Communications S.A.R.L. Petition for Expedited Declaratory Ruling, Declaratory Ruling*, 29

15   F.C.C.R. 3442, 3444 (2014). Brief, prerecorded calls encouraging existing pharmacy patients to get

16   immunized are "normal, expected and desired business communications" which "affect the health

17   and safety" of patients. Failing to apply the TCPA's broad emergency exception would run counter

18   to the intent of Congress, 7 F.C.C.R. 2736, and produce an "absurd and unforeseen result" that

19   Congress did not intend. *Ryabyshchuck,* supra, 2012 WL 5379143 at *4. Flu shot reminder calls

20   serve an emergency purpose, especially for those who are high risk, because they are calls made

21   necessary in a situation affecting the health and safety of consumers. The undisputed material facts

22   establish that the two prerecorded flu shot reminder calls placed by Safeway to Plaintiff are exempt

23   from the TCPA as Emergency Calls.

24

25        **2.    The Prerecorded Flu Shot Reminder Calls Placed by Safeway to
                  Plaintiff's Cell Phone Do Not Create TCPA Liability Because They Fall
26                Within the FCC's 2015 Order's Exception for Certain Healthcare Calls
                  Not Charged to the Called Party.**

27        In its July 2015 Order, the FCC ruled that no consent is needed under the TCPA for

28   healthcare calls to cell phones so long as certain conditions were met, including a determination that

the call has an "exigent" healthcare treatment purpose, there is no charge for the call, the called party

can opt out of future calls.  See *In the Matter of Rules & Regulations Implementing the Tel.*

*Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8030 & n. 490 (July 10, 2015)("2015 Order"), at ¶¶

146-148.[10]  The FCC identified a non-exhaustive list of the types of healthcare calls it considers to be

"exigent," including "prescription notification" calls and "wellness checkup" calls.  *Id.* ¶¶ 143-146

n.490.   The flu shot reminder calls Plaintiff challenges in this case fall within the FCC's exception

for "exigent" calls.

      First, the flu shot reminder call served an "exigent" healthcare purpose.  As established above,

the flu shot reminder calls at issue here are simply a subspecies of "prescription notification" calls:

both types of calls have an exigent healthcare treatment purpose – prescription notification calls,

which the FCC has found to have an exigent healthcare treatment purpose, remind patients of the

need to fill or pick up a filled prescription; flu shot reminder calls remind patients (█████████████

███████████) of the need to obtain a timely, annual flu shot.  Encouraging patients to get

annual flu shots is strongly supported by the medical community, pharmacists, and public health

agencies.  *Id.* at ¶¶ 143-146 n.490.[11]

---

[10]   Although the calls at issue here were made prior to the July 10, 2015 Order, courts "apply the law
in effect at the time that they decide a case *unless* that law would have an impermissible retroactive
effect as that concept is defined by the Supreme Court." *Landgraf v. USI Film Prods.* (1994) 511
U.S. 244, 263–64, 114 S.Ct. 1483, 128 L.Ed.2d 229; compare *Siding & Insulation Co. v. Alco
Vending, Inc.*, (6th Cir. May 9, 2016) -- F.3d --, 2016 WL 2620507, at *5 [citing *Landgraf* and
declining to apply FCC regulations under the TCPA retroactively where retroactive application
would have had impermissible effect of retroactively *expanding* defendant's liability].  Applying in
this case the existing safe harbor exception for prescription notifications not charged to the called
party would have no impermissible retroactive effect.

[11]   In the context of residential landlines, the FCC has also specifically found that immunization
reminders, such as the flu shot reminder calls at issue here, are not unsolicited advertisements:

    In the FTC's TSR [Telemarketing Sales Rule] proceeding, concern was raised,
    in relevant part, whether ***immunization reminders***, health screening
    reminders, medical supply renewal requests, and generic drug migration
    recommendations would constitute inducements to purchase goods or services
    * * *.  Under the second prong of the TCPA exemption provision, which
    requires that such calls not include an unsolicited advertisement, the
    Commission finds the calls at issue here are intended to communicate health
    care-related information rather than to offer property, goods, or services and
    conclude that such calls are not unsolicited advertisements.  Therefore, such

1    Second, Plaintiff was not charged for the flu shot reminder calls she received, in conformity

2    with the exemption. See *Id*. at ¶ 148. Plaintiff's mobile phone is covered by a simple choice family

3    unlimited talk, text and data plan. Plaintiff pays a flat rate each month, and does not get charged

4    anything extra for any incoming calls that she receives on her cell phone. That has been the case for

5    "at least a good four years" – back to about 2012 (well prior to the two flu shot reminder calls in

6    question here). Pltf.Depo. 15:6-17:21. There was no "charge" for the calls made to Plaintiff's cell

7    phone reminding her to get a flu shot.

8    Third, the flu shot calls met all of the remaining conditions required to claim the exemption.

9    The flu shot reminder calls were sent only to the wireless telephone number provided by the patient.

10   See 2015 Decision at ¶ 147(1); Hille Decl. ¶ 17. The messages stated the name of and gave contact

11   information for the healthcare provider as part of the opt-out notice. See 2015 Decision at ¶ 147(2);

12   Hille Decl. ¶ 19 & Exh. J. The flu shot reminder calls, like the prescription notifications the FCC

13   has determined fall within the exigent healthcare call exemption, were made "for an exigent

14   healthcare treatment purpose" (2015 Opinion at ¶ 146 & n. 490), not for purposes of telemarketing,

15   solicitation, or advertising. See 2015 Decision at ¶ 147(3); Hille Decl. ¶¶ 4-14 & Exhs. A-H,

16   inclusive. The calls were concise, and lasted less than a minute. See 2015 Decision at ¶ 147(4); Hille

17   Decl. ¶ 19 & Exh. J. Safeway made only 1 call per day to Plaintiff on the two days it called her, days

18

19   _____

             calls would satisfy the TCPA standard for an exemption as provided in the
20           Act and the FCC's implementing rules.

21   See 2012 Order, 27 FCC Rcd. at 1855-56 ¶ 63 [emphasis added]. The FCC "agree[d] with
     commenters that these [healthcare] calls serve a public interest purpose: to ensure continued
22   consumer access to health care-related information" Id. at ¶ 60. The FCC agreed with commenters
     that a healthcare exemption permits "the continuation of important communications by health care
23   providers and health insurance plans [about] * * * prescription refills, [and] immunization reminders
     * * *." *Id*. at 176. The FCC recognized that healthcare related calls, like immunization reminders
24   "do not tread heavily upon the consumer privacy interests because these calls are placed by the
     consumer's healthcare provider to the consumer and concern the consumer's health." *Id*. ¶ 63. It
25   would make no sense to conclude otherwise where the identical call is placed to a mobile phone
     instead of a landline. Further, in its recent 2015 Order, the FCC specifically found that "prescription
26   notifications" – which are akin to the flu shot reminder calls at issue in this case – are made for "a
     healthcare treatment purpose." See 2015 Order, 30 FCC Rcd. at 8013, ¶ 146 & n. 490. According to
27   the FCC, prescription notifications are "health care messages." *Id*. This is so even though
     prescription notices also serve a marketing purpose by increasing prescription sales.
28

1  two months apart.  See 2015 Decision at ¶ 147(5); Hille Decl. ¶ 18.  The flu shot reminder calls

2  provided Plaintiff with a means of opting out of future prerecorded flu shot calls.  See 2015 Decision

3  at ¶ 147(6); Hille Decl. ¶ 19 & Exh. J.  The undisputed material facts establish that Safeway is also

4  entitled to summary judgment on Plaintiff's TCPA claims because the calls are protected by the

5  FCC's 2015 safe-harbor healthcare call ruling.

6  **IV.     CONCLUSION.**

7          The undisputed material facts establish as a matter of law that Plaintiff's provision of her cell

8  phone number to Safeway constituted "prior express consent" for Safeway to make prerecorded flu

9  shot reminder calls to her cell phone, a complete defense to Plaintiff's TCPA claims.  The undisputed

10 material facts also establish that Safeway did not need Plaintiff's prior express consent to make the

11 calls.  The two prerecorded flu shot reminder calls about which Plaintiff complains are exempt from

12 the TCPA because the undisputed material facts establish that they are "emergency" calls as defined

13 by the Federal Communications Commission ("FCC").  Finally, Safeway was not required to obtain

14 prior express consent to make prerecorded flu shot reminder calls to Plaintiff's cell phone, because

15 flu shot reminder calls are exempted from any prior consent requirement by the FCC's July 10, 2015

16 declaratory ruling exempting from the TCPA certain healthcare calls not charged to the called party,

17 a ruling that applies with equal force to this action.  For the foregoing reasons, Safeway is entitled to

18 summary judgment on the TCPA claims asserted against it by Plaintiff Linda Jackson.

19

20 Dated: July 21, 2016                    DILLINGHAM & MURPHY
                                          WILLIAM F. MURPHY
21                                        JOHN N. DAHLBERG
                                          J. CROSS CREASON
22

23

24
                                By ___/s/ William F. Murphy_____
25                                        Attorneys for Defendant Safeway Inc.

26

27

28