| | |
|---|---|
| 1 | DILLINGHAM & MURPHY, LLP |
| | WILLIAM F. MURPHY, ESQ. (SBN 82482) |
| 2 | JOHN N. DAHLBERG, ESQ. (SBN 85122) |
| | J. CROSS CREASON, ESQ. (SBN 209492) |
| 3 | 353 Sacramento Street, Suite 2000 |
| | San Francisco, California 94111 |
| 4 | Telephone: (415) 397-2700 |
| | Facsimile: (415) 397-3300 |
| 5 | wfm@dillinghammurphy.com |
| | jnd@dillinghammurphy.com |
| 6 | jcc@fillinghammurphy.com |
| 7 | Attorneys for Defendant |
| | SAFEWAY INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA JACKSON and KHUZEMA SAVAI, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAFEWAY INC., a Delaware Corporation with its Principal Place of Business in Pleasanton, California, <br><br> Defendants | CASE NO. 3:15-cv-04419-JSC <br><br> **DEFENDANT SAFEWAY INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> **Date:** August 25, 2016 <br> **Time:** 9 A.M. <br> **Courtroom:** F, 15th Floor |

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT. ........................................................................................... 1

II. THE TCPA DID NOT REQUIRE SAFEWAY TO OBTAIN PRIOR EXPRESS *WRITTEN* CONSENT TO MAKE THE TWO FLU SHOT CALLS AT ISSUE HERE. ........................... 1

III. THE TWO PRECORDED FLU SHOT REMINDER CALLS MADE TO PLAINTIFF WERE WELL WITHIN THE SCOPE OF THE PRIOR EXPRESS CONSENTS LAINTIFF GAVE TO SAFEWAY ................................................................................ 4

IV. THE FLU SHOT REMINDER CALLS ARE EXEMPTED FROM THE TCPA AS EMERGENCY CALLS .................................................................................................... 9

V. THE PRERECORDED FLU SHOT REMINDER CALLS ARE ALSO PROTECTED BY THE FCC'S 2015 HEALTH CARE PHONE CALL EXCEPTION. ............................... 13

VI. PLAINTIFF'S OBJECTION TO THE DECLARATION OF BRIAN HILLE SHOULD BE OVERRULED ........................................................................................... 14

VII. CONCLUSION. ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Hudson v. Sharp Healthcare*
(S.D.Calif. 2014) 2014 WL 2892290 ................................................................................... 7

*Johnson v. Yahoo! Inc.*
(N.D.Ill. 2016) 2016 WL 25711 ........................................................................................... 6

*Landgraf v. USI Film Prods.*
(1994) 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 .................................................... 13

*Mais v. Gulf Coast Collection Bureau, Inc.*
(11th Cir. 2014) 768 F.3d 1110 ........................................................................................... 6

*Murphy v. DCI Biologicals Orlando, LLC*
(11th Cir. 2015) 797 F.3d 1302 ........................................................................................... 8

*Payton v. Kale Realty, LLC*
(N.D.Ill. 2016) __ F.Supp.3d __, 2016 WL 703869 ....................................................... 7, 8

*Reardon v. Uber Technologies, Inc.*
(N.D. Calif. 2015) 115 F.Supp.3d 1090 ............................................................................... 6

*Roberts v. Medco Health Solutions, Inc.*
(E.D.Mo. 2016) 2016 WL 3997071 ..................................................................... 10, 13, 14

*Satterfield v. Simon & Schuster, Inc.*
(9th Cir. 2009) 569 F.3d 946 ............................................................................................... 6

*Travel 100 Group, Inc. v. Mediterranean Shipping Company USA, Inc.*
(Ill.Ct.App. 2008) 321 Ill.Dec. 516 ..................................................................................... 6

*Travel-Travel Kirkwood, Inc. v. Jen N.Y. Inc.*
(Mo.Ct.Appeals 2006) ......................................................................................................... 6

*United States v. Schneider*
(10th Cir. 2013) 704 F.3d 1287 ......................................................................................... 15

*Zean v. Fairview Health Services*
(D. Minn. 2016) 149 F.Supp.3d 1129 .................................................................................. 7

*Zeidel v. YM LLC USA*
(N.D.Ill. 2015) ...................................................................................................................... 6

**Statutes and Regulations**

45 CFR § 160.103 .................................................................................................................. 1, 2

47 C.F.R. § 64.1200(a)(3)(v) ......................................................................................................... 3

47 C.F.R. § 64.1200(f)(12) ............................................................................................. 11, 12, 14

47 C.F.R. § 64.1200(f)(4) ..................................................................................................... 10, 12

47 CFR § 64.1200(a)(2) ................................................................................................................. 1

47 U.S.C. § 226(b)(1)(A) ............................................................................................................... 9

47 USC § 227(b)(2)(B)(ii) ............................................................................................................. 3

**FCC Declaratory Rulings and Orders**

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    27 F.C.C.R. 1830 ("2012 Order") ........................................................................... 3, 11

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961
    ("2015 Order") ........................................................................................................ 2, 5, 13

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 –
Blackboard, Inc. & Edison Electric Institute*
    (August 4, 2016) 2016 WL 4158735 ("2016 Order") ................................................ 6, 7

1  I.  **PRELIMINARY STATEMENT.**

2     Plaintiff <u>LINDA JACKSON</u> ("Plaintiff") admits that "[t]he basic facts giving rise to this action are

3  not in dispute." Dkt. 62, p. 7:3.  The undisputed material facts here establish that defendant <u>SAFEWAY</u>

4  <u>INC</u>. ("Safeway") is entitled to summary judgment on Plaintiff's Telephone Consumer Protection Act

5  ("TCPA") claims, for three, separate and independent reasons.  <u>First</u>, Plaintiff gave Safeway "prior express

6  consent" to make the flu shot reminder calls to that cell phone number in November 2014 and January 2015,

7  a complete defense to Plaintiff's TCPA claims.  <u>Second</u>, the flu shot reminder calls about which Plaintiff

8  complains are exempt from the TCPA because they are "emergency" calls as defined by the Federal

9  Communications Commission ("FCC").  <u>Third</u>, the flu shot reminder calls are covered by the FCC's 2015

10 declaratory ruling, exempting certain healthcare calls from the TCPA's prior consent requirements.

11 II. **THE TCPA DID NOT REQUIRE SAFEWAY TO OBTAIN PRIOR EXPRESS**
   **_WRITTEN_ CONSENT TO MAKE THE TWO FLU SHOT CALLS AT ISSUE HERE.**
12

13    An automated or prerecorded telemarketing or advertising call to a wireless phone number generally

14 requires the prior express written consent of the called party *except* a call that delivers a "health care"

15 message made by, or on behalf of, a "covered entity" or its "business associate."  Such calls require, at most,

16 only the prior express consent of the called party.  47 C.F.R. § 64.1200(a)(2).  There is no dispute that

17 Safeway is a "covered entity."  But Plaintiff argues that § 64.1200(a)(2)'s exception to the FCC's prior

18 express written consent rule does not apply to the flu shot reminder calls to Safeway pharmacy patients

19 because, she claims, they are not "health care messages" – they are, she says, insufficiently individualized,

20 and are too much like advertising, to constitute calls that deliver a "'health care' message."

21    Safeway selected Linda Jackson's phone number to make flu shot reminder calls during the 2014-

22 2015 flu season because she, individually, had received that same "care", "service", or "dispensing * * * in

23 accordance with a prescription"[1] (45 C.F.R. § 160.103) from Safeway during the previous 2013-2014 flu

24 ─────────────────────────

25 [1]   Plaintiff also argues that because Safeway usually does not need a verbal or written prescription
   *from a physician* to provide flu vaccinations to patients, calls relating to vaccinations must not relate
26 to "health care", the definition of which includes the dispensing of a drug or other item "in
   accordance with a prescription."  Safeway's moving papers established that in California, where
27 Plaintiff received her vaccinations, and in many other states, pharmacists are authorized by law to
   issue prescriptions for the flu vaccine, and the records in support of Safeway's motion establish that
28 prescriptions were in fact written to cover the two flu shots in question.  Patients cannot simply pick
   up flu shots at the checkout counter and self-administer the vaccine.  That the prescriptions are not

season and because Safeway, and the CDC, recommend that patients update their flu vaccination each flu season. The calls reminded Plaintiff that she received a flu shot previously, and that "the best way to prevent the flu is by being vaccinated each year. If you haven't received your flu shot – now is the time! The CDC is recommending that everyone over the age of 6 months receive their flu shot this season." The calls satisfy the HIPAA regulations the FCC uses to define "health care"[2]

Plaintiff's Opposition attempts to re-characterize Safeway as analogous to medical device and pharmaceutical manufacturers, both of whom are usually held not to "provide health care" because they do not provide care to individuals. The analogy is unsupportable. Safeway does not manufacturer or wholesale flu vaccinations; rather, through its pharmacy professionals at its San Ramon store, it administered a flu shot to the *individual,* e.g., Plaintiff Linda Jackson, in January and November 2014, a classic example of administering health care.

Plaintiff next claims that the content of the flu shot reminder calls did not individually identify her, Linda Jackson, and, therefore, did not relate to her individual health care. Inclusion of an individual's name, however, is not a component of the definition of "health care" or "heath information" under HIPAA. HIPAA regulations, moreover, would discourage the inclusion of a name for privacy reasons, in case the wrong person received it. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 ("2015 Order") at ¶ 146. Plaintiff also argues that the call did not advise her that her health care provider recommended a flu shot call for her "individually" or give her "individualized" medical advice. It is uncertain what point Plaintiff is trying to make by invoking these terms, but it is certain that they are not contained in the definition of "healthcare" set forth in 45 C.F.R. § 160.103.

Plaintiff also argues that the calls "offer property, goods or services" and therefore constitute telemarketing or advertising, not a "health care message". Dkt. 62, p. 15:8-25. This argument incorrectly

---

generally issued by a *physician* does not mean that they are not dispensed *in accordance with* a prescription. Plaintiff's assertion that flu shots are "generally available to the public without a prescription" is unsupported by any citation to evidence or law.

[2] 45 C.F.R. § 160.103 defines "health care" as "care, services, or supplies related to the health of an individual. Health care includes, but is not limited to, the following: (1) Preventive, * * * care, * * * service, * * * or procedure with respect to the physical * * condition, * * of an individual or that affects * * function of the body; and (2) Sale or dispensing of a drug, * * * or other item in accordance with a prescription.".

characterizes the calls, but more importantly, it is irrelevant. Plaintiff's Opposition nowhere discusses or provides the Court with the full text of 47 C.F.R. § 64.1200(a)(2), which establishes beyond cavil that it excepts telemarketing calls with health care messages from the prior express written consent requirement, and requires only prior express consent:

> No person or entity may * * *
>
> > (2) Initiate, or cause to be initiated, **any telephone call that includes or introduces an advertisement or constitutes telemarketing**, using an automatic telephone dialing system of an artificial or prerecorded voice, to [cell phones], **other than** a call made with the prior express written consent of the called party * * * or **a call that delivers a "health care" message** made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

The exception from the prior express *written* consent requirement in 47 C.F.R. § 64.1200(a)(2) for a call that delivers "'health care' message" does not depend on the absence in the call of any offer of "property, goods or services." Section 64.1200(a)(2) simply, and plainly, exempts any call – advertising or telemarketing calls included – from the prior express *written* consent requirement if the call delivers a "'health care' message". The purported requirement that such a call must also contain no telemarketing or advertising or offer of "property goods or services" in order to qualify under § 64.1200(a)(2)'s exception is entirely Plaintiff's creation, not the FCC's.[3]

Plaintiff also cites the 2012 FCC Order, 27 F.C.C.R. at 1856, ¶ 63, and Paragraph 146 of the 2015 Order (Dkt. 62, pp. 11:14-12:7, 19:8-24) to argue that the calls contain impermissible telemarketing. The cites passages, however, do not discuss the exception in 47 C.F.R. § 64.1200(a)(2) (governing calls to wireless numbers). Rather, they addresses a *separate exemptions* created by the FCC (47 C.F.R. § 64.1200(a)(3)(v)) applicable to calls that deliver a "health care message" to "residential lines" (i.e. landlines)) and to exigent health care calls (2015 Order ¶¶ 143-148) created by the FCC pursuant to section 47 USC § 227(b)(2)(B)(ii) [authorizing regulatory exemptions from *any* prior consent for calls not containing an "unsolicited advertisement."] and § 227(b)(2)(C) [authorizing exemptions from *any* prior consent for certain calls not charged to the called party]. By contrast, in 47 C.F.R. § 64.1200(a)(2), the FCC

---

[3] Indeed, it would have been odd for the FCC to create an *exception* to the general rule only for calls that contain no advertising or telemarketing, given that the *general rule* itself only applies to a call that "includes or introduces an advertisement or constitutes telemarketing".

excepted calls to cellular telephones with health care messages (including such calls constituting "telemarketing") from the FCC's own heightened prior express *written* consent rule applicable to telemarketing and advertising. In doing so, the FCC was not constrained by 47 USC § 227(b)(2)(B) or (b)(2)(C). But even if it were, the FCC's determination that "immunization reminders" qualify under 47 USC § 227(b)(2)(B) and do not constitute telemarketing settles the issue. 2012 Order, 27 FCC Rcd. At 1855-56 ¶ 63.

### III. THE TWO PRECORDED FLU SHOT REMINDER CALLS MADE TO PLAINTIFF WERE WELL WITHIN THE SCOPE OF THE PRIOR EXPRESS CONSENTS PLAINTIFF GAVE TO SAFEWAY.

Plaintiff's Opposition does not challenge the conclusion that Plaintiff's provision of her cell phone number to Safeway on numerous occasions without restriction or limitation (or revocation) constituted prior express consent on the part of Plaintiff to be called by Safeway at that number, at least for some purposes. Instead, Plaintiff opposes Safeway's motion to for summary judgment on her TCPA claims on the limited ground that the flu shot reminder calls "fall outside the scope of consent that Plaintiff could possibly provide by filling in her cell phone number in the context of receiving the prior year's flu shot or in obtaining unrelated prescription medications." Dkt. 62, p. 19:13-17.

It is hard to imagine a case where prerecorded calls were more closely-related to the purposes for which Plaintiff repeatedly gave Safeway her cell phone number, than the two flu shot reminder calls at issue here. Plaintiff gave her cell phone number to Safeway at the outset of the Pharmacy-Patient relationship in 2010. Plaintiff (and her doctor) also gave her cell phone number to Safeway on numerous occasions in the course of obtaining prescription medications for her. Plaintiff gave her cell phone number to Safeway in connection with getting a flu shot on January 20, 2014. Also on January 20, 2014 (and earlier, in 2012 and again in 2013), Plaintiff signed acknowledgements of Safeway's Pharmacy Privacy Policy in which she acknowledged and agreed that Safeway's "***pharmacy may use information in your health record to*** monitor the performance of the pharmacists providing treatment to you and to improve quality and effectiveness; contact you to provide refill reminders; describe or recommend treatment alternatives; and ***offer information about health-related benefits and services that may be of interest***." Hille Decl. ¶ 27 &

Exhs. O and P [emphasis supplied]; Sigala Decl. ¶ 3 & Exhs. A-C).[4] Safeway called Plaintiff on November 6, 2014 reminding her that it was time to get another flu shot. Plaintiff gave her cell phone number to Safeway again in connection with getting a flu shot the very next day, on November 7, 2014. On January 9, 2015, Safeway made a second flu shot call. The close relationship between Safeway's the circumstances under which Plaintiff provided her cell phone number (and otherwise provided, in connection with the Privacy policy, her consent to be contacted) places them well within the scope of consent given by Plaintiff.

Plaintiff instead argues that "[p]roviding a cell phone number at the time of receiving a flu shot for the 2013-2014 flu season at a Safeway pharmacy would logically permit a patient, at a maximum, to be robocalled regarding that specific visit, including follow up calls to remind a patient of possible side effects of the flu shot or calls regarding recall information in the event that the pharmacy discovers a problem with the vaccine provided to the patient." Dkt. 62, p. 22:20-23:5 [emphasis in original]. In support of this extremely constricted view of prior express consent, Plaintiff improperly tries to convert FCC *examples* of two calls that would be *within* the scope of consent into the *outer permissible limit* of such calls. See Dkt. 62, p. 20:17.

The FCC's 2015 Order provided just two examples of what would constitute calls closely-related to the situation in which the phone number was originally given: "For example, if a patient provided his phone number upon admission to a hospital for scheduled surgery, then calls pertaining to that surgery or follow up procedures for that surgery would be closely-related to the purpose for which the telephone number was originally provided" (2015 FCC Order at ¶ 141, n.474). Plaintiff urges the Court to read these examples as somehow identifying the *outer limits* of what could constitute closely-related calls, asserting that "[n]owhere does the FCC indicate that such provision of a patient's cell phone number permits the hospital to make autodialed calls to the patient a year after the patient provided his number advertising the availability of a new, similar surgical procedure that the hospital is currently performing or for any purpose not directly related to the original surgery itself." Dkt. 62, p. 20:10-17.[5]

---

[4] Plaintiff's Opposition completely fails to address, discuss or even mention these three Privacy Policy acknowledgements signed by Plaintiff. They provide additional, independent evidence that Plaintiff provided Safeway with prior express consent, over and above the mere provision of her cell phone number on numerous occasions, to use her information (including her cell phone number) to contact her about health-related benefits and services – additional evidence of prior express consent that Plaintiff's Opposition nowhere opposes or even addresses.

[5] Although Plaintiff incorrectly construes these FCC examples of "closely related" – from a *hospital* setting – as somehow setting the outer limits of the scope of consent given through provision of

Plaintiff cites no FCC decision or decided case in which the scope of prior express consent has been limited, as she advocates, only to calls regarding the particular transaction in which Plaintiff provided a cell phone number to the caller (e.g., giving a cell phone number in connection with prescription A filled in August 2016 constitutes prior express consent only for calls regarding that particular prescription filled in August 2016 – but not for calls regarding prescription A filled at other times, and not for calls related to Prescription B).[6] That is because there is no such case, and no such FCC decision, that has ever held that or anything like that in construing the TCPA.[7] To the contrary, within the past week the FCC released a Declaratory Ruling (*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 – Blackboard, Inc. & Edison Electric Institute* (August 4, 2016) 2016 WL 4158735 ["2016 FCC Order"]) in which the FCC made plain that, in the case of robocalls from schools, the scope of

---

telephone numbers to all healthcare providers, including pharmacies, if Safeway were required make an analogy, advising its patients to update their flu vaccination for the current year flu strain would surely qualify as a "follow-up procedure" to the previous season's vaccination. As discussed herein, however, Safeway is not required demonstrate that its calls fit within any particular FCC example. The calls were plainly "closely related" to the "mission" of Safeway's pharmacy and the purposes for Plaintiff's phone number was given to Safeway, including as those concepts were most recently discussed in the FCC's August 4, 2016 Declaratory Ruling.

[6] Plaintiff argues that her "provision of her cell phone number in the context of seeking to have a prescription filled at a Safeway pharmacy would logically permit Safeway to use an autodialer and/or prerecorded message to contact Plaintiff about that prescription, not about any pharmacy services unrelated to that prescription." Dkt. 62, p. 23, n.6 [emphasis in original]. She makes the same argument with respect to instances where her treating physicians supplied her cell phone number to Safeway on her behalf. *Id.* Plaintiff's attempt to confine the scope of prior express consent to the particular transaction in which she gave her cell number conflicts with the TCPA, the FCC's rulings, and relevant caselaw.

[7] The cases on which Plaintiff relies to avoid the FCC rule that providing one's cell phone number constitutes prior express consent (see Dkt. 62, p. 21, n.3) have been discredited or are inapposite. The Northern District of California has rejected *Thrasher-Lyon v. CCS Commercial, LLC*, on which Plaintiff relies for a restricted view of prior express consent (*Reardon v. Uber Technologies, Inc.* (N.D. Calif. 2015) 115 F.Supp.3d 1090, 1098-1099 ["This Court is not persuaded by the *Thrasher–Lyons*' court's reasoning"]; *Thrasher-Lyon* has even been discredited in its own judicial district as representing "the minority view" of acts constituting prior express consent. *Johnson v. Yahoo! Inc.* (N.D.Ill. 2016) 2016 WL 25711 at *3. *Travel-Travel Kirkwood, Inc. v. Jen N.Y. Inc.* (Mo.Ct.Appeals 2006) has also been disagreed with and rejected. *Travel 100 Group, Inc. v. Mediterranean Shipping Company USA, Inc.* (Ill.Ct.App. 2008) 321 Ill.Dec. 516, 523-524. *Zeidel v. YM LLC USA* (N.D.Ill. 2015) stands for the unremarkable proposition that a motion for summary judgment must be denied where evidence of consent is contested. No such contested evidence is present here. *Satterfield v. Simon & Schuster, Inc.* (9th Cir. 2009) 569 F.3d 946 was a third party case. To the extent that Plaintiff argues that *Satterfield*'s dicta that consent be "clear and unmistakable" means that Plaintiff's offering of her cell phone number on numerous occasions to Safeway did not constitute prior express consent, the FCC has ruled definitively (and adversely to Plaintiff) on this issue, and this Court does not have the authority to disregard the FCC's ruling. See, e.g., *Mais v. Gulf Coast Collection Bureau, Inc.* (11th Cir. 2014) 768 F.3d 1110, 1119.

consent is not measured by a call's relationship to particular transactions in which the phone number was provided, but rather "consistent with the Commission's rationale relating to the provision of telephone numbers to *healthcare providers* * * * the scope of consent includes communications from the school *closely related to the educational mission of the school or to official school activities* * * *." Id. at ¶ 23 [emphasis supplied]. The *one* type of call the FCC opined would "likely fall outside the scope of consent" concerned "non-school events" that "lacked any educational purpose or connection to official school activities" *Id.* at ¶ 25. The flu shot call here was decidedly not a "non-pharmacy" topic. Similarly, in the case of a public utility, the FCC did not confine the scope of consent to the particular transaction in which the customer provided a phone number, but instead noted that the robocalls or messages to numbers provided by utility customers need only be "closely related to the utility service * * *." Id. at ¶ 29. The FCC further held that calls closely-related to the utility service included calls "notifying customers they may be eligible for subsidized or low-cost services due to certain qualifiers, e.g., age, low income or disability." Id. at ¶ 30.

      The two flu shot reminder calls in question here were unquestionably closely related to the health and wellness mission of Safeway's pharmacy. Those two calls were also without a doubt closely related to the pharmacy services provided by Safeway to its patients. At a bare minimum, the two calls were at least as closely related as the utility calls blessed by the FCC notifying customers about subsidized or low cost services as being "closely related to the utility service."

      Cases addressing how to measure the scope of consent also properly reject Plaintiff's artificially constricted definition of prior express consent. See, e.g., *Zean v. Fairview Health Services* (D. Minn. 2016) 149 F.Supp.3d 1129, 1134-1135 [Plaintiff purchased sleep therapy equipment from defendant; defendant thereafter called him at least every three months with prerecorded messages prompting Plaintiff to purchase replacement supplies from it; held: calls urging purchase of replacement supplies were sufficiently related to consent to be contacted "in regard to [his] services and accounts" to negate TCPA liability]; *Hudson v. Sharp Healthcare* (S.D.Calif. 2014) 2014 WL 2892290 at *6 ["The TCPA does not require that calls be made 'for the exact purpose for which the number was provided,' but rather that the call 'bear some relation to the products or services for which the number was provided.'"]; *Payton v. Kale Realty, LLC* (N.D.Ill. 2016) __ F.Supp.3d __, 2016 WL 703869 at *10 [Plaintiff and Defendant engaged in discussions about the possibility of merging their businesses during late 2011 and early 2012; in the course of those

communications, Plaintiff provided the Defendant with his cell phone number; the discussions terminated in January 2012, and no merger occurred; nearly two years later, in October 2013, Plaintiff received an autodialed text message from Defendant inviting him to apply to become an independent contract/agent; <u>held</u>: Plaintiff's TCPA claims rejected because "a text message offering Plaintiff an opportunity to enter into an independent contractor relationship was related to the initial reasons for which [Plaintiff] disclosed his cellular phone number (for business discussions regarding a potential merger)"].

Plaintiff's scope of consent analysis is limited to trying to explain away the consent she gave by voluntarily providing her cell phone number to Safeway. Of course, Plaintiff's election to give Safeway her cell phone number on numerous occasions without limitation (e.g., in connection with a prior flu shot) is more than enough to establish prior express consent to be called in the future at that number to be reminded of the need for another flu shot in a new flu season. But it is also undisputed that on three occasions, in 2012, 2013, and again on January 20, 2014, Plaintiff signed acknowledgements of Safeway's Privacy Policies, each of which included her acknowledgement and agreement that Safeway's "pharmacy may use information in your health record to * * * contact you to provide refill reminders; describe or recommend treatment alternatives; and offer information about health-related benefits and services that may be of interest." Safeway's flu shot reminder calls are also within the scope of consent given by Plaintiff in the three Privacy Policy acknowledgements. Plaintiff's Opposition doesn't even attempt to respond to this showing.

Plaintiff's suggestion that the passage of time somehow vitiated the prior express consent given by Plaintiff when she provided her cell phone number to the Safeway pharmacy in connection with her January 2014 flu shot is also unsupportable. See, e.g., *Murphy v. DCI Biologicals Orlando*, LLC (M.D.Fla. 2013) 2013 WL 6865772, <u>affirmed</u> *Murphy v. DCI Biologicals Orlando, LLC* (11th Cir. 2015) 797 F.3d 1302 [prior express consent found two years after Plaintiff provided her phone number]. Plaintiff's argument that consent is time-limited was recently addressed and rejected in *Payton v. Kale Realty, LLC*, *supra*:

> "Plaintiffs also take issue with the 'lengthy time span between the communications' in December 2011 and the text message of October 2013. The time lapse of almost two years, however, is of no significance, because consent under the TCPA does not have an expiration date and is considered effective until revoked." *Id*. at *10.

Here, Plaintiff's prior express consent was not just a distant echo. Plaintiff continued to provide her cell phone number to Safeway's pharmacy as late as November 7, 2014, just one day after she received the

November 6, 2014 prerecorded call urging her to get a flu shot, a call that she now claims to have been a "waste [of] time * * * a nuisance, and annoying and harassing."[8] First Amended Complaint ¶ 35.

Finally, Plaintiff argues that Safeway's two flu shot reminder calls were somehow akin to "autodialed calls to the patient a year after the patient provided his number advertising the availability of a new, similar surgical procedure that the hospital is currently performing or for any purpose not directly related to the original surgery itself" (Dkt. 62, p.. 20:15-17). The fact that the vaccine used in flu shots necessarily changes from year to year (because the flu virus changes from year to year) does not convert flu shots given during the 2014-2015 flu shot season into a "new, similar * * * procedure" i.e., a product and service that is so different from the product and service offered during the 2013-2014 flu season that prior express consent should not be found. To the contrary, it is the continual change in flu strains and in the seasonal vaccine that necessitates follow-up with patients. Just like a prescription for a 30 days' supply of medicine necessarily envisions the need for a refill at the end of 30 days, and thus a prerecorded prescription pick-up reminder call is within the scope of consent, a flu shot for one season is good only for that season, and necessarily must be renewed if the patient is to maintain the same level of protection she received with her initial flu shot. The scope of consent should be measured by the benefit the patient receives from flu shots (protection from influenza), and not absurdly limited to the particular vaccine formula in use in during a particular flu season.

## IV. THE FLU SHOT REMINDER CALLS ARE EXEMPTED FROM THE TCPA AS EMERGENCY CALLS.

Safeway's Opening Brief established that its flu shot reminder calls are exempted from the TCPA because they qualify as "calls made for emergency purposes" as that term has been defined by the FCC. 47 U.S.C. § 227(b)(1)(A). The legislative history of the TCPA shows that Congress intended "emergency purposes" to be interpreted broadly rather than narrowly, but delegated to the FCC the authority to define the term "emergency purposes." Consistent with that Congressional mandate, the FCC's broad definition of "emergency purposes" includes "health" and "safety" messages, and is not limited to sudden catastrophic

---

[8] Plaintiff nowhere argues, nor could she do so credibly, that her unstated and uncommunicated belief that she "had" to give her cell phone number to get a flu shot could or should operate as any kind of limitation on the scope of consent she provided to Safeway.

events: "The term 'emergency purposes' means calls made necessary in *any* situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200(f)(4) (emphasis added).

The FCC, within the past week, issued Declaratory Rulings addressing, in part, the "emergency purposes" exception, holding that robocalls or messages from schools which impact the health and safety of students and faculty fall within the exception ever where the subject matter only potentially affects health and safety. In the case of a school, calls that satisfy the emergency purposes exception include "incidents of threats and/or imminent danger to the school due to fire, dangerous persons, health risks (e.g., toxic spills), and unexcused absences. We find that these types of calls fall within the emergency-purpose exception because they potentially affect the health and safety of students, faculty, and other school staff members." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 – Blackboard, Inc. & Edison Electric Institute* (August 4, 2016) 2016 WL 4158735, ¶ 21. Similarly, prescriptions run out, and need to be refilled, or the health and safety of the patient may potentially be affected. Calls reminding patients to renew or refill their prescriptions are emergency calls within the meaning of the TCPA; so, too, flu shots need to be renewed each season as flu strains change. Calls about such immunizations involve matters potentially affecting the health and safety of patients every bit as much as prescription renewals.

*Roberts v. Medco Health Solutions, Inc*. (E.D.Mo. 2016) 2016 WL 3997071, decided just days after Safeway filed its Opening Brief, fully supports this motion. In *Roberts*, Plaintiff purchased a pre-paid cell phone and was assigned a phone number that had previously been assigned to someone else. Shortly thereafter, she began receiving automated calls from defendants, who were pharmacy benefit managers attempting to contact the prior owners of the phone number (a wife, husband, and son) about renewing, ordering, and processing their prescription medications. In the case of the Son, his father had advised the defendants that "the medicine Son was taking was 'a must' and without it, Son could end up in the hospital." As for the Husband and the Wife, continuing the prescription medications merely "would have been important to their continued health" – just like the prescription medications many of us take on a regular basis. *Roberts*, supra, at *2. Of the five calls to Plaintiff that might have supported TCPA liability, only two were expressly related to the Son's medication. A third call was made about the Husband's medication, a fourth was about the status of Family household's order, and the content of the fifth call was

not recalled. *Id.* Plaintiff filed an action alleging the calls violated the TCPA. The court granted defendants' motion for summary judgment, because "each of the five calls at issue is covered under the 'emergency purposes' exception to the TCPA." *Id.* at *3. *Roberts* reasoned that "in many instances a patient's ability to timely receive a prescribed medicine is critical in preventing a major health emergency. In this case, one of the family members who was the intended recipient of the calls was taking medications whose absence would have significantly impacted his ongoing health. Calls like the ones here, involving an attempt to confirm or refill a prescription order, schedule a prescription delivery, or confirm that a prescription is on its way, fall within the ambit of 'calls made necessary in any situation affecting the health and safety of consumers." *Id.* Here, the calls made by Safeway to Plaintiff, like the calls in *Roberts*, urged the intended recipient to renew a prescription medication that would have been *important* to their continued health – not "absolutely needed." The *Roberts* decision found that the call directed to the Husband about renewing his prescription – which was simply "important to [his] continued health" and not "a must" like the Son's medication – was also properly exempt from the TCPA as an emergency call. Flu shot reminder calls are equally "important to [Plaintiff's] continued health."

Plaintiff argues that because she believes the flu shot reminder calls "constitute telemarketing and solicit recipients to purchase a flu shot at a Safeway pharmacy," the calls are not emergency calls. Dkt. 62, p. 24:25-20:3. Plaintiff's Opposition overlooks the FCC's determination that immunization reminder calls in the context of residential landlines do not constitute unsolicited advertising or "telemarketing" ["the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services" – 47 C.F.R. § 64.1200(f)(12)]:

> In the FTC's TSR [Telemarketing Sales Rule] proceeding, concern was raised, in relevant part, whether ***immunization reminders***, health screening reminders, medical supply renewal requests, and generic drug migration recommendations would constitute inducements to purchase goods or services * * *. Under the second prong of the TCPA exemption provision, which requires that such calls not include an unsolicited advertisement, the Commission finds the calls at issue here are intended to communicate health care-related information rather than to offer property, goods, or services and conclude that such calls are not unsolicited advertisements. Therefore, such calls would satisfy the TCPA standard for an exemption as provided in the Act and the FCC's implementing rules.

See 2012 Order, 27 FCC Rcd. at 1855-56 ¶ 63 [emphasis added]. The outcome should not change when the analysis turns from landlines to cell phones. The FCC's determination that a prerecorded flu immunization

Page 11 - Case No. 3:15-cv-04419-JSC
DEFENDANT SAFEWAY INC.'S REPLY MPA IN SUPPORT OF MSJ

reminder call is "intended to communicate health care-related information rather than to offer property, goods or services" also negates any showing that Safeway's two calls to Plaintiff were "telemarketing" ["the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services" – 47 C.F.R. § 64.1200(f)(12)]. The purpose for which the calls were made controlled whether they were "telemarketing." Here, the flu shot reminder calls were intended to communicate and did communicate health care-related information, and were not telemarketing.

Second, Plaintiff does not challenge Safeway's showing that the "emergency call" exemption is to be interpreted broadly and expansively, but Plaintiff quibbles at some length that flu shot reminder calls are not "calls made necessary in any situation affecting the health and safety of consumers" (47 C.F.R. § 64.1200(f)(4)) because, she contends, flu shots are only "recommended" and not "necessary." But Plaintiff draws the wrong distinction. It is not the flu shot that must be "necessary," but rather, the calls that are permitted by the emergency exception are calls *necessary to warn patients of a situation [the upcoming flu season] potentially affecting their health and safety,* and providing those patients with information as to how they might protect themselves. What patients do with the warning is their own business.[9] Plaintiff also argues that in the case of flu shots "there is no immediate necessity to justify the use of prerecorded calls to cell phones." Dkt. 62, p. 26:16-22:4. This argument ignores the fact that the FCC has defined the term "emergency calls" much more broadly to include calls made necessary in any situation *potentially* affecting the health and safety of consumers. 2016 WL 4158735, ¶ 21.

Third, Plaintiff argues that the legislative history of the TCPA shows that the emergency purposes language in the TCPA was intended to accommodate the concerns rural cooperatives have had with respect to power outages on their utility lines. Plaintiff doesn't elaborate on why or how this observation supports her opposition. See Dkt. 62, p. 26:4-15. However, the logical inference Plaintiff seems to want the reader to draw

---

[9] Of course, the CDC does not "*require* that persons obtain flu vaccines" (Dkt. 62, p. 25:17-18 [emphasis added]) any more than a local government can *force* its citizenry to shelter in place, as opposed to simply strongly recommending it – for example during chemical spraying (see, e.g., https://m.facebook.com/CityOfGreenvilleTX ["It is recommended that citizens stay indoors during this time."]) or searching for alleged criminals at large in the community (see, e.g., http://www.wral.com/while-apex-police-seek-shooting-suspects-residents-asked-to-stay-inside/15751407 ["While officers gave chase, Apex Police Capt. Anne Stephens asked area residents to remain indoors."]). In both situations, no one would doubt that a prerecorded telephone call warning residents to stay indoors would properly be classified as an "emergency call."

is that the "emergency purposes" language is to be applied only to power outages. *Roberts v. Medco, supra,* rejected the argument that "emergency calls" were to be limited to large scale emergencies, such as natural disasters, that affect significant portions of the population, holding that "the plain language of the regulation in no way limits it application based on the size or public impact of the reason for the call." *Roberts, supra*, at *3. And the FCC recently applied the "emergency purposes" exception to schools. 2016 WL 4158735, ¶¶ 20-21.

Finally, Plaintiff appeals to "common sense," asserting that under Safeway's interpretation of the emergency call exemption, companies would be allowed to make robocalls to consumers whenever they are at work, in a meeting, or even driving, to market vitamins, high blood pressure monitors, gym memberships, home security systems, etc. all in the name of 'health and safety' because it's been 'recommended'." This, in turn, "would open up the floodgates and eviscerate the protections afforded consumers by the TCPA." Dkt. 62, p. 27:9-17.

Oh, please. Calls urging patients to renew and maintain the health, protection and safety provided by prescription medications and immunizations are fundamentally different from calls hawking gym memberships or home security systems, nor are they as Plaintiff elsewhere argues (Dkt. 62, p. 17:12-17) calls "more akin to a message advertising the availability of broccoli at Safeway stores" – the last time we looked, the absence of broccoli from patients' diets was not responsible for an annual average of 114,000 hospitalizations and 36,000 deaths in the United States alone. See Hille Decl. ¶¶ 5-6 & Exhs. B & C. Flu shot reminder calls necessarily remind and warn patients that each year produces a new strain of flu, and how to protect themselves from it. They are properly exempted from the TCPA as emergency calls.

## V. THE PRERECORDED FLU SHOT REMINDER CALLS ARE ALSO PROTECTED BY THE FCC'S 2015 HEALTH CARE PHONE CALL EXCEPTION.

In its July 2015 Order, the FCC ruled that no consent is needed under the TCPA for healthcare calls to cell phones so long as certain conditions were met, including a determination that the call has an "exigent" healthcare treatment purpose, there is no charge for the call, the called party can opt out of future calls. See 2015 Order at ¶¶ 146-148.[10] The FCC identified a non-exhaustive list of the types of healthcare

---

[10] Plaintiff's Opposition does not contest that although the calls at issue here were made prior to the July 10, 2015 Order, courts "apply the law in effect at the time that they decide a case *unless* that law would have an impermissible retroactive effect as that concept is defined by the Supreme Court." *Landgraf v. USI Film Prods.* (1994) 511 U.S. 244, 263–64, 114 S.Ct. 1483, 128 L.Ed.2d 229.

calls it considers to be "exigent," including "prescription notification" calls and "wellness checkup" calls. *Id.* ¶¶ 143-146 n.490.[11] The flu shot reminder calls Plaintiff challenges in this case fall within the FCC's exception for "exigent" calls.

Plaintiff's only Opposition to Safeway's motion for summary judgment on this ground is to argue that the prerecorded message Safeway used "include telemarketing (even if they could ostensibly be construed to serve other purposes)." Dkt. 62, p. 24:1-9. But as Safeway noted in its Opening Brief (Opening Brief at p. 21 n.11), in the context of residential landlines, the FCC has specifically found that immunization reminders, such as the flu shot reminder calls at issue here, are *not* unsolicited advertisements, and the outcome should not change when the analysis turns from landlines to cell phones. The FCC's determination that a where a prerecorded flu immunization reminder call is "intended to communicate health care-related information rather than to offer property, goods or services" also negates any showing that Safeway's two calls to Plaintiff were "telemarketing" ["the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services" – 47 C.F.R. § 64.1200(f)(12)]. It is the intent of the call that controls the determination as to whether the safe-harbor provision. Here, the undisputed material facts establish that the intent of the prerecorded calls placed to Plaintiff was to communicate health care-related information.

## VI. PLAINTIFF'S OBJECTION TO THE DECLARATION OF BRIAN HILLE SHOULD BE OVERRULED.

Plaintiff objects (Dkt. 62, p. 28:5-29:12) to the declaration of pharmacist and Corporate VP of Patient, Specialty and Wellness Services for Albertsons, Brian Hille, (Dkt. 59-5) on the ground that Mr. Hille purportedly offers his "legal opinion" as to whether the flu shot calls fall within the TCPA's "emergency purposes" exception. Dkt. 62, p. 28:8-9.[12] Plaintiff's objection should be overruled. In the

---

[11] The Court in *Roberts v. Medco Health Solutions Inc.*, *supra*, determined that there was no inconsistency between the existence of an exemption for "emergency" call and the FCC's recent exemption for healthcare calls, noting that the FCC "seemed to acknowledge that many healthcare calls fall within both the emergency purposes exception and the healthcare exemption." 2016 WL 3997071 *3.

[12] Plaintiff's Opposition also repeatedly asserts, without any apparent point, that the Hille declaration supplies only "lay" testimony. But the first paragraph of the declaration establishes that Mr. Hille is also testifying as an "unpaid expert" and sets forth his qualifications – unchallenged by Plaintiff – to provide expert testimony. Dkt. 59-5, p. 2.

passages to which Plaintiff objects, Mr. Hille properly and competently sets forth the health risks created by flu viruses, and the importance and purposes, including "emergency" purposes, of both the flu vaccine and of communicating information about influenza to patients, via flu shot reminder calls and otherwise. His declaration also carefully sets forth the factual bases for that testimony. Mr. Hille's testimony does not offer a legal opinion or a legal conclusion. The Hille Declaration does establish an admissible factual and evidentiary basis supporting Safeway's legal argument that the "emergency purposes" exception to the TCPA should apply, but that does not render the Hille declaration an inadmissible legal opinion. See, e.g., *United States v. Schneider* (10th Cir. 2013) 704 F.3d 1287, 1293–94 [Rule 704(a) of the Federal Rules of Evidence allows an expert to opine on an "ultimate issue" to be decided by the trier of fact provided that the expert explain the basis for any summary opinion].

## VII. CONCLUSION.

The undisputed material facts establish as a matter of law that Plaintiff gave Safeway constituted "prior express consent" to make prerecorded flu shot reminder calls to her cell phone. The undisputed material facts also establish that the two prerecorded flu shot reminder calls about which Plaintiff complains are exempt from the TCPA because they are "emergency" calls as defined by the Federal Communications Commission ("FCC"), and that they are protected by the FCC's July 10, 2015 declaratory ruling exempting from the TCPA certain healthcare calls not charged to the called party. For the foregoing reasons, Safeway is entitled to summary judgment on the TCPA claims asserted against it by Plaintiff Linda Jackson.

Dated: August 11, 2016

DILLINGHAM & MURPHY
WILLIAM F. MURPHY
JOHN N. DAHLBERG
J. CROSS CREASON

By  /s/ William F. Murphy
   Attorneys for Defendant Safeway Inc.