UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA JACKSON,<br><br>             Plaintiff,<br><br>    v.<br><br>SAFEWAY, INC.,<br><br>             Defendant. | Case No. 15-cv-04419-JSC<br><br>**ORDER GRANTING DEFENDANT SAFEWAY INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 58 |

Plaintiff Linda Jackson brings this putative class action against Defendant Safeway, Inc. arising from the receipt on her wireless phone of prerecorded telephone messages promoting Safeway's flu shots. (Dkt. No. 56.[1]) Plaintiff contends that these calls violate the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii). (*Id.* ¶¶ 3, 51-58.) Now before the Court is Safeway's motion for summary judgment on Plaintiff's TCPA claims.[2] Safeway seeks summary judgment on three alternative grounds: (1) Plaintiff gave Safeway prior express consent to call her cell phone about the flu shots; (2) the flu shot calls are exempt from the TCPA as emergency calls; and (3) the flu shot calls fall within the FCC's 2015 exemption from the TCPA for certain exigent health care calls not charged to the called party. (Dkt. No. 58.) After carefully considering the arguments and briefing submitted, and having had the benefit of oral argument on August 25, 2016, the Court GRANTS Safeway's motion for summary judgment on

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Plaintiff's amended complaint contains two TCPA claims for relief: (1) violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii); and (2) knowing and/or willful violations of the same TCPA section, seeking treble damages. (Dkt. No. 56 ¶¶ 51-58.)

grounds (1) and (3).[3,4]

## BACKGROUND

### I.  Factual Summary

Safeway operates stores throughout the United States, the majority of which offer both grocery and pharmacy services to customers and patients. (Dkt. No. 58-5 ¶ 2.) Through its pharmacies, Safeway provides prescription and non-prescription medications. (*Id.*) Flu shots are among the medications that Safeway provides to its patients. (*Id.* ¶ 3.)

Plaintiff is a resident of Oakland, California. (Dkt. No. 58-7 at 7-8 (Ex. A at 10:22-11:25).) Plaintiff generally shopped at Safeway's store on Fruitvale Avenue in Oakland, California, but also occasionally went to the Safeway store in San Ramon, California, near her place of work. (*Id.* at 15-16 (Ex. A at 19:15-20:8).) Plaintiff first received a seasonal flu shot from Safeway at its pharmacy in San Ramon on January 20, 2014. (Dkt. No. 58-5 ¶¶ 22-23 & at 63-66 (Exs. K, L).) In connection with this flu-shot visit, Plaintiff completed a Consent and Release form, where she provided her wireless telephone number to Safeway above the line indicating "Home Phone." (*Id.* ¶ 22 & at 63-64 (Ex. K).) When completing this form, Plaintiff did not discuss with anyone why she needed to provide the requested information; instead she was simply asked to complete the form before receiving the flu shot. (Dkt. No. 58-7 at 24-27 (Ex. A at 31:18-34:6).) Safeway maintained an electronic transaction record of Plaintiff's administered flu shot; the record contains the Rx # or prescription number, the name of the administered drug, and an electronic copy of Plaintiff's signature. (Dkt. No. 58-5 ¶ 23 & at 65-66 (Ex. L).)

In late September 2014, Safeway entered into an agreement with a third-party provider of communications solutions, MarkeTouch Media, Inc. ("MarkeTouch"), for purposes of contacting Safeway's existing pharmacy patients through the use of prerecorded telephone calls to remind

---

[3] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5, 9.)

[4] Because the Court grants summary judgment on these two independent grounds, it does not address Safeway's argument (2) relating to the exception for calls made "for emergency purposes" under 47 U.S.C. § 226(b)(1)(A). (*See* Dkt. No. 58 at 23-25.) Further, the Court denies as moot Plaintiff's objections to certain portions of the Declaration of Brian Hille as the objected-to evidence relates to Safeway's "emergency purposes" argument. (*See* Dkt. No. 62 at 28-29.)

1  them to get a flu shot for the new flu season (2014-2015).  (*Id.* ¶ 15; Dkt. No. 58-6 ¶¶ 2-3.)  On

2  November 6, 2014, November 7, 2014, and January 9, 2015, Safeway, through MarkeTouch,

3  placed automated flu shot reminder calls to a specific set of its pharmacy patients.  (Dkt. No. 58-6

4  ¶ 3.)  The contacted patients were limited to those patients who satisfied three criteria: (1) the

5  patient was an existing Safeway patient who previously provided her telephone number to

6  Safeway; (2) Safeway believed that the patient had received a flu shot at one of its pharmacies

7  during the immediately preceding year's flu season; and (3) Safeway's records indicated that the

8  patient had not yet received a flu shot during the current flu season.  (Dkt. No. 58-5 ¶ 17.)

9        MarkeTouch's records indicate that Plaintiff did not answer Safeway's November 6, 2014

10  flu shot reminder call.  The call instead went to Plaintiff's wireless phone's voicemail box, where

11  the following prerecorded message was left for Plaintiff:

> Hello, this is a flu shot reminder call from your Safeway Pharmacy. Because you previously received a flu shot from Safeway you already know the best way to prevent the flu is by being vaccinated each year. If you haven't already received your flu shot – now is the time! The CDC is recommending that everyone over the age of 6 months receive their flu shot this flu season. Flu Shots are now available from your Safeway community Pharmacists, no appointment necessary, while stocks last.  To opt-out of future reminders, please call 866-284-6198.  Thank you, goodbye.

17  (*Id.* ¶ 19 & at 60-62 (Ex. J).)

18        The next day, on November 7, 2014, Plaintiff visited Safeway's pharmacy store in San

19  Ramon, California and received a flu shot.  As with her prior visit, Plaintiff completed a Consent

20  and Release form before receiving her flu shot and again listed her wireless telephone number

21  above the line indicating "Home Phone."  (Dkt. No. 58-5 ¶ 24 & at 67-68 (Ex. M).)  Safeway

22  maintained an electronic transaction record of this flu shot as well, identifying the prescription

23  number and the administered drug.  (*Id.* ¶ 25 & at 69-70 (Ex. N).)

24        On January 9, 2015, Safeway placed a second prerecorded flu shot reminder call to

25  Plaintiff's wireless telephone number.  Plaintiff again did not answer the call and another

26  prerecorded flu shot message, identical to the one from November 2014, was left in Plaintiff's

27  phone's voicemail box.  (*Id.* ¶¶ 18, 20 & at 55-62 (Exs. I, J).)

28

## II.     Procedural History

Plaintiff and one other individual, Khuzema Savai, initiated this action on September 25, 2015, alleging violations of the TCPA based on various automated telephone calls from Safeway relating to flu shot reminders and prescription reminders.  (Dkt. No. 1.)  Only Plaintiff's TCPA claims relating to the flu shot reminders remain.[5]  (Dkt. No. 56.)  The parties submitted a further joint case management conference in which they identified the limited issues on which Safeway would move for early summary judgment—specifically, whether Plaintiff provided Safeway with prior express consent to call her with automated flu shot reminders and whether, for two separate reasons, Safeway did not require Plaintiff's consent at all.  (Dkt. No. 49 at 2.)  The Court thereafter set a briefing and hearing schedule on Safeway's motion for summary judgment.  (Dkt. No. 51.)  Safeway's motion is now before the Court.  (Dkt. No. 58.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must draw "all reasonable inferences [and] resolve all factual conflicts in favor of the non-moving party."  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).  A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine if "a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There can be "no genuine issue as to any material fact" when the moving party shows "a complete failure of proof concerning an essential element of the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where, as here, the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion.  *See* Fed. R. Civ. P. 56(c);

---

[5] The parties stipulated to the dismissal of Khuzema Savai's claims against Safeway without prejudice.  (*See* Dkt. Nos. 47, 55-1, 56.)

*Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

## DISCUSSION

**I.     TCPA**

Congress enacted the TCPA amid outrage from consumers "over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012) (citation and internal quotation marks omitted). "Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. The Act bans certain practices invasive of privacy and directs the Federal Communications Commission (FCC or Commission) to prescribe implementing regulations." *Id.* at 744. "The FCC's interpretations of TCPA are controlling unless invalidated by a court of appeals." *Olney v. Job.com, Inc.*, No. 1:12-CV-01724-LJO, 2014 WL 1747674, at *4 (E.D. Cal. May 1, 2014) (citations omitted); *see also* Hobbs Act, 28 U.S.C. § 2342 *et seq.*; *Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC, 2015 WL 5013299, at *2 (N.D. Cal. Aug. 24, 2015), *appeal dismissed* (Jan. 26, 2016) ("[C]ourts defer to the FCC's interpretation of a term in the TCPA, so long as the term is 'not defined by the TCPA' and the FCC's interpretation is 'reasonable.'") (citation omitted).

Pursuant to its granted authority, the FCC previously issued regulations prohibiting "calls made by automated telephone dialing systems and artificial or prerecorded voice messages" unless there was an emergency or the called party provided her prior express consent. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8755 ¶ 5 (Oct. 16, 1992); *see also* 47 U.S.C. § 227(b)(1)(A) (prohibiting any call using an automatic telephone dialing system or an artificial or prerecorded voice "other than a call made for emergency purposes or made with the prior express consent of the called party").

In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls under the TCPA, requiring "prior express *written* consent" for most automated telemarketing calls to wireless numbers and residential lines. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1838 ¶ 20 (Feb. 5, 2012)

1  (hereinafter, "2012 Order").  The FCC codified the 2012 Order at 47 C.F.R. § 64.1200(a), *see*

2  *Telephone Consumer Protection Act of 1991*, 77 Fed. Reg. 34233, 34246 (June 11, 2012); that

3  section provides, in relevant part:

> (a) No person or entity may:
>
> \* \* \*
>
> (2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than . . . *a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103*.

47 C.F.R. § 64.1200(a)(2) (emphasis added) (the "Telemarketing Health Care Exception").

In 2015, the FCC created a safe harbor from the consent requirement for certain "exigent" calls to wireless telephone numbers that have a "healthcare treatment purpose" and "are not charged to the called party."  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8030-31 ¶¶ 143, 146 (July 10, 2015) (hereinafter, "2015 Order").[6]  The FCC limited the exemption to the following types of calls: "appointment and exam confirmations and reminders, *wellness checkups*, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up intended to prevent readmission, *prescription notifications*, and home healthcare instructions."  *Id.* (emphasis added). In addition to being one of these types of calls, a call must also satisfy each of the following requirements to be exempt:

> 1) voice calls and text messages must be sent, if at all, only to the wireless telephone number provided by the patient;

---

[6] While the FCC issued its 2015 Order after the two flu shot calls in question, the Court applies the law in effect at the time it renders its decision.  *See, e.g.*, *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 989 (9th Cir. 2012) ("While the [Public Utilities Commission] and the district court obviously did not have this clear guidance available to them at the time they rendered their respective decisions below, the FCC's newly promulgated interpretation of the statute must yet be given effect."); *US W. Commc'ns, Inc. v. Jennings*, 304 F.3d 950, 963 (9th Cir. 2002) (reversing "the district court to the extent it held that certain FCC regulations, now in effect but not in effect at the time of the [Arizona Corporation Commission's] decisions, [did] not apply on judicial review of the interconnection agreements.").  Further, based on the arguments raised in briefing and at oral argument, both parties agree that the 2015 Order is applicable in this case.

> 2) voice calls and text messages must state the name and contact information of the healthcare provider (for voice calls, these disclosures would need to be made at the beginning of the call);
>
> 3) voice calls and text messages are strictly limited to the purposes permitted in para. 146 above; must not include any telemarketing, solicitation, or advertising; may not include accounting, billing, debt-collection, or other financial content; and must comply with HIPAA privacy rules;
>
> 4) voice calls and text messages must be concise, generally one minute or less in length for voice calls and 160 characters or less in length for text messages;
>
> 5) a healthcare provider may initiate only one message (whether by voice call or text message) per day, up to a maximum of three voice calls or text messages combined per week from a specific healthcare provider;
>
> 6) a healthcare provider must offer recipients within each message an easy means to opt out of future such messages, voice calls that could be answered by a live person must include an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the call recipient to make an opt-out request prior to terminating the call, voice calls that could be answered by an answering machine or voice mail service must include a toll-free number that the consumer can call to opt out of future healthcare calls, text messages must inform recipients of the ability to opt out by replying " "STOP," which will be the exclusive means by which consumers may opt out of such messages; and,
>
> 7) a healthcare provider must honor the opt-out requests immediately.

*Id.* at 8032 ¶ 147 (the "Exigent Healthcare Treatment Exemption").

## II.     Summary Judgment

Plaintiff alleges that Safeway's flu shot calls were placed in violation of the TCPA's restrictions on the use of automated telephone equipment. (*See* Dkt. No. 56 ¶¶ 3, 51-54 (citing 47 U.S.C. § 227(b)(1)(A)(iii)).) Safeway contends the TCPA claims fail because Plaintiff provided express consent to receive automated phone calls that deliver a "health care" message pursuant to the Telemarketing Health Care Exception set forth in 47 C.F.R. § 64.1200(a)(2) and because Safeway did not require Plaintiff's consent to make such calls under the Exigent Healthcare Treatment Exemption set forth in the 2015 Order. Because the flu shot calls did not contain telemarketing or advertising under the FCC's guidance, the Court addresses first the Exigent Healthcare Treatment Exemption. To the extent there is a genuine dispute of material fact as to

7

whether the flu shot reminder calls are telemarketing calls, the Court also addresses in the alternative Safeway's argument that the calls satisfy the Telemarketing Health Care Exception.

### A.     The Exigent Healthcare Treatment Exemption

Safeway argues that it did not require Plaintiff's prior consent to place the automated flu shot reminder calls because the calls fall under the FCC's 2015 safe harbor for "exigent" calls that have a "healthcare treatment purpose" and "are not charged to the called party." *See* 2015 Order, 30 F.C.C. Rcd. at 8030-31 ¶¶ 143, 146.  The Court concludes that every reasonable trier of fact would have to find that the flu shot calls qualify for the Exigent Healthcare Treatment Exemption.

Safeway has provided undisputed evidence that the flu shot calls were not charged to the called party, as Plaintiff had an unlimited talk, text, and data plan (*see* Dkt. No. 58-7 at 11-13) and thus she did not incur a charge for the calls nor did the calls count against any plan limit on minutes.  *See* 2015 Order, 30 F.C.C. Rcd. at 8032 ¶ 148 (noting that calls are exempted "only if they are not charged to the recipient, including not being counted against any plan limits that apply to the recipient (*e.g.*, number of voice minutes, number of text messages)").  And Safeway's flu shot calls satisfy each of the remaining requirements from the FCC's 2015 Order: (1) the flu shot reminder calls Plaintiff received were sent only to the wireless telephone number that she provided to Safeway in connection with receiving flu shots (Dkt. No. 58-5 ¶¶ 17-20); (2) the calls sufficiently identified Safeway's name and contact information (*id.* ¶ 19 & at 60-62 (Ex. J)); (3) the calls are limited to the purposes identified in paragraph 146 of the 2015 Order (relevant here, "prescription notifications" as well as "wellness checkups") and, as discussed below, do not include telemarketing, solicitation, or advertising; (4) the calls were concise and lasted less than a minute (*id.*); (5) on the two days Safeway called Plaintiff, it made only one call per day (*id.* ¶ 18); and (6) the calls provided Plaintiff the opportunity to opt out by calling a toll-free number, 866-284-6198 (*id.* ¶ 19 & at 60-62 (Ex. J)).[7]

Plaintiff contends that the Exigent Healthcare Treatment Exemption does not apply because (1) the flu shot calls are not for a "healthcare treatment purpose" and (2) the calls "must

---

[7] Element (7), requiring a healthcare provider to honor opt-out requests immediately, is inapplicable here because Plaintiff did not call to opt out.

not include any telemarketing, solicitation, or advertising." (Dkt. No. 62 at 23-24.) With respect to Plaintiff's first argument, every reasonable trier of fact would have to conclude that Safeway's flu shot calls were made for a "healthcare treatment purpose." Indeed, the importance of flu shots to a patient's health, and to the general public, is established by the fact that the Center for Disease Control has recommended the flu vaccine to *everyone* six months of age and older for every season since February 2010. (Dkt. No. 58-5 at 18 (Ex. B).) Further, the flu shot calls are the same as the "wellness checkup" and "prescription notification" calls specifically enumerated by the FCC as subject to the exemption. *See* 2015 Order, 30 F.C.C. Rcd. at 8031 ¶ 146. Reminding a patient to receive an annual flu shot is not materially different, for healthcare treatment purposes, than reminding a patient to receive an annual wellness checkup. Nor is it materially different from a reminder that a prescription needs to be refilled.

Regarding Plaintiff's second argument, the FCC previously ruled, in the context of residential landlines, that certain calls subject to HIPAA, including "immunization reminders," communicate health care-related information and are not calls with "unsolicited advertisements":

> In the FTC's TSR [Telemarketing Sales Rule] proceeding, concern was raised, in relevant part, whether *immunization reminders*, health screening reminders, medical supply renewal requests, and generic drug migration recommendations would constitute inducements to purchase goods or services. In our proceeding, one commenter argues that a call "pushing" flu vaccines would be illegal under the TCPA. Without reaching the merits of this argument, we do believe that an exemption for prerecorded health care-related calls to residential lines is warranted when such calls are subject to HIPAA. With respect to the privacy concerns that the TCPA was intended to protect, we believe that prerecorded health care-related calls to residential lines, when subject to HIPAA, do not tread heavily upon the consumer privacy interests because these calls are placed by the consumer's health care provider to the consumer and concern the consumers' health. Moreover, the exemption we adopt today does not leave the consumer without protection. The protections provided by HIPAA safeguard privacy concerns. Under the second prong of the TCPA exemption provision, which requires that such calls not include an unsolicited advertisement, *we find the calls at issue here are intended to communicate health care-related information rather than to offer property, goods, or services and conclude that such calls are not unsolicited advertisements*. Therefore, such calls would satisfy the TCPA standard for an exemption as provided in the Act and our implementing rules.

2012 Order, 27 F.C.C. Rcd. at 1855-56 ¶ 63 (emphasis added). Safeway argues—and the Court

agrees—that "the outcome [of the FCC's 2012 Order] should not change when the analysis turns from landlines to cell phones." (Dkt. No. 64 at 18.) Under the FCC's guidance, there is no genuine dispute that the flu shot reminder calls, i.e., immunization reminders, are not telemarketing, solicitation, or advertising calls.[8]

Accordingly, every reasonable trier of fact would find that the flu shot reminder calls fall under the Exigent Healthcare Treatment Exemption and Safeway thus did not require Plaintiff's prior express consent under the TCPA.[9]

## B. The Telemarketing Health Care Exception

According to Safeway, each of the flu shot reminder calls constitutes "a call that delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,'" 47 C.F.R. § 64.1200(a)(2), and thus, if the calls did constitute telemarketing, Safeway required only Plaintiff's prior express consent in order to place those calls.[10] Further, Safeway asserts, Plaintiff in fact provided such express consent, therefore eliminating any TCPA liability. *See Reardon v.*

---

[8] Though not raised in her briefing, Plaintiff at oral argument also maintained that the flu shot calls are not covered by HIPAA and thus not entitled to consideration for any health care exceptions. Specifically, Plaintiff argued the flu shot calls are not subject to HIPAA because, under the FCC's 2015 Order, "a HIPAA message . . . has to be of such a personal nature that it would violate the privacy of the patient if, for example, another person received the message." (Dkt. No. 72 at 9.) Plaintiff, however, misquotes the FCC's 2015 Order, which provides: "We also clarify that HIPAA privacy rules shall control the content of the informational message where applicable, such as where the message attempts to relate information of a sensitive or personal nature; as one commenter cautions: 'the information provided in these exempted voice calls and texts must not be of such a personal nature that it would violate the privacy' of the patient if, for example, another person received the message." 2015 Order, 30 F.C.C. Rcd. at 8031 ¶ 146. In other words, and contrary to Plaintiff's assertion, the FCC indicated that a HIPAA-compliant message must *not* be of such a personal nature that a person's privacy would be violated if another person received the message. Plaintiff's argument is therefore without merit.

[9] The analysis for the 2015 exemption is the same for both flu shot reminder calls on November 7, 2014 and January 9, 2015, as the timing of the calls in relation to when Plaintiff received her flu shot is not relevant under the requirements for the exemption set forth in the 2015 Order.

[10] Under the plain language of 47 C.F.R. § 64.1200(a)(2), it appears that "a call that delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate'" is not subject to *any* consent requirement, written or otherwise. In their briefing, however, both parties assume that there is a "prior express consent" requirement for such "health care" calls. (*See* Dkt. No. 58 at 14 ("Plaintiff gave Safeway her prior express consent to call her cell phone number."); Dkt. No. 62 at 19 ("[A]t a minimum, because it is undisputed that the calls were placed to Plaintiff's cellular telephone number using an ATDS and/or an automated or prerecorded voice, Safeway must at least have obtained Plaintiff's prior express consent under 47 C.F.R. § 64.1200(a)(1)(iii)."). For purposes of this motion, the Court assumes that the use of prerecorded calls delivering a "health care" message requires prior express consent.

10

*Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) ("Prior express consent is a complete defense to Plaintiffs' TCPA claims.") (citation omitted). The burden is on Safeway to establish "express consent." *See Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 n.1 (9th Cir. 2011) ("'[E]xpress consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."); *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent.").

Plaintiff disputes that "prior express consent"—as opposed to "prior express *written* consent"—is the proper inquiry here because, according to her, the flu shot reminder calls are not "health care" messages and thus not exempt from the written consent requirement. She also argues that, even if she provided prior express consent, Safeway's flu shot calls were beyond the scope of her provided consent. Under the present record, every reasonable trier of fact would conclude that the flu shot calls deliver a "health care" message and were within the scope of Plaintiff's prior express consent. *See* 47 C.F.R. § 64.1200(a)(2).

### 1. "Health Care" Message

The first question is whether Safeway's flu shot reminder calls constitute "health care" messages delivered by a "covered entity" or its "business associate" within the meaning of the Telemarketing Healthcare Exception. *See* 47 C.F.R. § 64.1200(a)(2). As set forth in Section 64.1200(a)(2), the meaning of those three terms is governed by their definitions in the HIPAA Privacy Rule. *See id.* (". . . as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103"). Initially, Safeway asserts—and Plaintiff does not challenge—that, as a pharmacy, it is a health care provider and thus a "covered entity"[11] under HIPAA and that MarkeTouch, the party

---

[11] HIPAA defines "covered entity" as:

> Covered entity means:
> (1) A health plan.
> (2) A health care clearinghouse.
> (3) A health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter.

11

1  placing the automated flu shot calls, is a "business associate" of Safeway.  (*See* Dkt. No. 58 at 17

2  (citing Dkt. No. 58-5 ¶¶ 2, 18, *and* Dkt. No. 58-6 ¶ 2 & at 4-26 (Ex. B)).)  The Court therefore

3  accepts these assertions as true.

4  Next, Safeway contends that the flu shot reminder calls deliver a "health care" message.

5  Under HIPAA, "health care" is defined as follows:

6  
7  > Health care means care, services, or supplies related to the health of an individual.  Health care includes, but is not limited to, the following:

8  
9  
10  > (1) Preventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service, assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body; and

11  
12  > (2) Sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription.

13  45 C.F.R. § 160.103.  Safeway argues that the flu shot reminder calls concern "care, services, or

14  supplies related to the health of an individual" and that the administration of flu shots constitutes

15  "dispensing of a drug . . . in accordance with a prescription."

16  **a.  "Related to the Health of an Individual"**

17  Safeway asserts that flu shots concern "care, services, or supplies related to the health of an

18  individual" because, "through its pharmacy professionals at its San Ramon store, it administered a

19  flu shot to the *individual*, e.g., Plaintiff Linda Jackson, in January and November 2014, a classic

20  example of administering health care."  (Dkt. No. 64 at 6 (emphasis in original).)  The Court

21  agrees and concludes that every reasonable trier of fact would find that Safeway provides actual

22  health care services "related to the health of an individual" when it administers flu shots to each of

23  its individual patients.   Indeed, Plaintiff would be hard-pressed to argue that a doctor

24  administering a flu shot to a patient—just as Safeway's pharmacists do—does not provide "health

25  care" related to the patient's health.

26  Plaintiff nevertheless maintains that the flu shot calls are not "related to the health of an

27  ---

28  45 C.F.R. § 160.103.

individual," and thus not "health care" messages, by likening Safeway's provision of flu shots to generic drug, biologics, and device manufacturers that the Department of Health and Human Services ("HHS") previously held are not "health care providers" because they do not provide "health care" services to individuals. *See Standards for Privacy of Individually Identifiable Health Information*, 65 Fed. Reg. 82462, 82568 (Dec. 28, 2000) ("We do not intend that a manufacturer of supplies that are generic and not customized or otherwise specifically designed for particular individuals, e.g., ace bandages for a hospital, is a health care provider. Such a manufacturer is not providing 'health care' as defined in the rule and is therefore not a covered entity."). Plaintiff's attempted comparison is unpersuasive. No reasonable trier of fact could conclude that the actual administration of flu shots to individual patients is the same as manufacturing supplies. Moreover, as noted above, Plaintiff does not dispute Safeway's assertion and supporting evidence that Safeway is a "covered entity" under HIPAA as a "health care provider." *See* 45 C.F.R. § 160.103. This distinguishes Safeway from the mere manufacturers of supplies, which the HHS expressly determined are not "health care providers."

Plaintiff further claims that the flu shot calls cannot be for "health care" purposes under the Telemarketing Healthcare Exception because they impermissibly contain advertising or telemarketing content. (Dkt. No. 62 at 15-16.) The Court disagrees. Under the plain language of the regulation, the FCC created an exception to the express written consent requirement for any advertising or telemarketing call so long as the call also delivers a "health care" message. *See* 47 C.F.R. § 64.1200(a)(2). As Safeway correctly notes, "it would have been odd for the FCC to create an *exception* to the general rule only for calls that contain no advertising or telemarketing, given that the *general rule* itself only applies to a call that 'includes or introduces an advertisement or constitutes telemarketing'." (Dkt. No. 64 at 7 n.3 (emphasis in original).)

Thus, every reasonable trier of fact would conclude that Safeway's flu shot calls are "health care" messages because they relate to the "care, services, or supplies related to the health of an individual." 45 C.F.R. § 160.103.

### b. "Dispens[ed] . . . in Accordance with a Prescription"

Although the flu shot calls deliver a "health care" message because they concern "care,

13

services, or supplies related to the health of an individual," the Court also addresses Safeway's second argument that the flu shots it provides are drugs dispensed "in accordance with a prescription." In support, Safeway has provided unrefuted evidence from Brian Hille ("Hille"), the Corporate VP of Patient, Specialty and Wellness Services at Albertsons LLC (which merged with Safeway in 2015) (Dkt. No. 58-5 ¶ 1), that flu shots are prescription drugs that pharmacists in California have been granted the authority to prescribe without the need for a physician:

> Flu shots are vaccines and among the medications provided by Safeway pharmacies to its patients. Flu shots are also prescription medications, which pharmacists are permitted to administer on demand based on state regulations that confer either prescription authority or prescriptive authority by a protocol. In other words, a Safeway pharmacy does not usually need a written or verbal prescription from a physician to provide a flu shot to Safeway's patients.

(*Id.* ¶ 3.) Hille's declaration is consistent with the relevant California regulations, which permit pharmacists to not only "[a]dminister immunizations [such as flu shots] pursuant to a protocol with a prescriber," Cal. Bus. & Prof. Code § 4052(a)(11), but also to "independently initiate and administer vaccines listed on the routine immunization schedules recommended by the federal Advisory Committee on Immunization Practices (ACIP), in compliance with individual ACIP vaccine recommendations, and published by the federal Centers for Disease Control and Prevention (CDC) for persons three years of age and older," Cal. Bus. & Prof. Code § 4052.8. Additionally, Safeway's evidence shows that for each flu shot that was administered to Plaintiff, Safeway maintained an electronic transaction record that contained a prescription number and the specific drug that was administered to Plaintiff. (*See* Dkt. No. 58-5 at 65-66 (Ex. L), 69-70 (Ex. N).) Safeway also recorded these prescriptions as part of Plaintiff's overall prescription history. (*Id.* ¶ 21 & at 79-87 (Ex. Q).)

Plaintiff responds that Safeway "contradictorily states that '[f]lu shots are prescription medication' but then, in the very next sentence, states that '[a] Safeway pharmacist does not usually need a written or verbal prescription from a physician to provide a flu shot to a Safeway patient.'" (Dkt. No. 62 at 16 (brackets in original).) Safeway's statements, however, are not irreconcilable—simply because a prescription "from a physician" is not required does not mean, as

14

1  Plaintiff urges, that no prescription is required.  Moreover, when questioned at oral argument how
2  renewing a flu shot each year, after the prior season's shot is no longer effective, is different from
3  renewing an expired prescription, Plaintiff argued that "what the FCC has focused on is how
4  important that prescription may be to the person's health."  (Dkt. No. 72 at 10.)  But, given the
5  CDC's flu shot recommendation to everyone six months of age and older for every season since
6  February 2010 (Dkt. No. 58-5 at 18 (Ex. B)), there can be no dispute that flu shots are in fact
7  important to a person's health and to the health of the general public.  Therefore, based on the
8  record before the Court, there is no genuine dispute of material fact that flu shots are drugs
9  dispensed "in accordance with a prescription."

10  In sum, every reasonable trier of fact would conclude that Safeway's flu shot reminder
11  calls are "health care" messages under the relevant FCC and HIPAA guidelines both because they
12  concern "care, services, or supplies related to the health of an individual" and because providing
13  flu shots constitutes "dispensing of a drug . . . in accordance with a prescription."  *See* 47 C.F.R.
14  § 64.1200(a)(2).  Thus, for purposes of this motion, Safeway was only required under the
15  regulation to have Plaintiff's prior express consent—and not prior express *written* consent—before
16  engaging in automated flu shot calls.

17  **2.  Scope of Prior Express Consent**

18  The Court now turns to whether Plaintiff provided her express consent to receive phone
19  calls to Safeway and whether Safeway's flu shot calls were within the scope of that consent.  On
20  the issue of consent, the FCC has clarified "that provision of a phone number to a healthcare
21  provider constitutes prior express consent for healthcare calls subject to HIPAA by a HIPAA-
22  covered entity and business associates acting on its behalf, as defined by HIPAA, if the covered
23  entities and business associates are making calls within the scope of the consent given, and absent
24  instructions to the contrary."  2015 Order, 30 F.C.C. Rcd. at 8029 ¶ 141.  Further, the FCC stated
25  that "[b]y 'within the scope of consent given, and absent instructions to the contrary,' we mean
26  that the call must be closely related to the purpose for which the telephone number was originally
27  provided.  For example, if a patient provided his phone number upon admission to a hospital for
28  scheduled surgery, then calls pertaining to that surgery or follow-up procedures for that surgery

15

would be closely related to the purpose for which the telephone number was originally provided." *Id.* at 8029 n.474.

Safeway's evidence establishes that Plaintiff provided her wireless phone number in connection with receiving flu shots at Safeway's San Ramon pharmacy. (Dkt. No. 58-5 ¶¶ 22, 24.) Thus, Safeway argues, Plaintiff provided her express consent to receive automated telephone calls from Safeway. *See, e.g.*, *Reardon*, 115 F. Supp. 3d at 1098-99 ("[A]ny plaintiff who provided her phone number as part of the Uber application process consented to receive Uber's texts about becoming an Uber driver."). Safeway further asserts that the flu shot calls were within the scope of Plaintiff's provided consent because they arose out of identical circumstances—that is, "a cell phone number given by Plaintiff to Safeway in connection with Plaintiff's getting a flu shot in January 2014 was used the very next flu season to remind Plaintiff that it was time for her to get another flu shot." (Dkt. No. 58 at 22.)

Plaintiff concedes that she provided her wireless phone number to Safeway but disagrees that the automated flu shot reminder calls were within the scope of consent. (*See* Dkt. No. 62 at 19-23.) According to Plaintiff, under the FCC's guidance and relevant case law, "[p]roviding a cell phone number at the time of receiving a flu shot for the 2013-2014 flu season at a Safeway pharmacy would logically permit a patient, at a maximum, to be robocalled <u>regarding that specific visit</u>, including follow-up calls to remind a patient of possible side effects of the flu shot or calls regarding recall information in the event that the pharmacy discovers a problem with the vaccine provided to the patient." (*Id.* at 22-23 (emphasis in original).) The scope of provided consent, however, cannot be so narrowly construed.

As a first matter, Plaintiff's attempt to limit "closely related" calls to *only* those calls pertaining to a specific surgery (or visit) or follow-up procedures for that surgery (or visit) is misplaced—the FCC's provided hypothetical merely serves as an "example" of "closely related" calls and not, as Plaintiff suggests, an exhaustive or comprehensive list. *See* 2015 Order, 30 F.C.C. Rcd. at 8029 n.474 ("For example, . . . ."). To the contrary, courts addressing the scope of consent have taken a broader approach than the one advocated by Plaintiff, finding the "closely related" requirement satisfied so long as the call bears some relation to the reason for which the

16

number was originally provided. *See, e.g.*, *Hudson v. Sharp Healthcare*, No. 13-CV-1807-MMA NLS, 2014 WL 2892290, at *6 (S.D. Cal. June 25, 2014) ("The TCPA does not require that calls be made 'for the exact purpose for which the number was provided,' but rather that the call 'bear some relation to the product or service for which the number was provided.'") (citation omitted); *Olney*, 2014 WL 1747674, at *7 ("Defendant is correct that TCPA does not require that a call be made 'for the *exact* purpose for which the number was provided,' but it undoubtedly requires that the call bear some relation to the product or service for which the number was provided.") (emphasis in original).

The FCC's recent guidance also indicates that the scope of consent to be considered is broader than what Plaintiff urges here. Addressing consent to receive automated calls from schools, the FCC stated that, "consistent with the Commission's rationale relating to the provision of telephone numbers to healthcare providers and debt collectors, that when a parent/guardian or student provides only their wireless number as a contact to a school, the scope of consent includes communications from the school closely related to the educational mission of the school or to official school activities absent instructions to the contrary from the party who provides the phone number." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG02-278, 2016 WL 4158735, at *8 ¶ 23 (Aug. 4, 2016). The FCC went on to note that calls pertaining to "*non-school* events"—such as those that "lacked any educational purpose or connection to official school activities"—"do[] not necessarily qualify as closely related." *Id.* ¶ 25 (emphasis in original); *see also id.* at *9 ¶ 29 (clarifying that "consumers who provide their wireless telephone number to a utility company when they initially sign up to receive utility service, subsequently supply the wireless telephone number, or later update their contact information, have given prior express consent to be contacted by their utility company at that number with messages that are closely related to the utility service"). Under this reasoning, Plaintiff's overly narrow view of "closely related" cannot stand.

The Court concludes that every reasonable trier of fact would have to find that Safeway's flu shot reminder calls to Plaintiff for future flu seasons bear sufficient relation to the original reason for which Plaintiff provided her number—namely, for her to receive flu shots from

17

Safeway in January 2014 and again in November 2014.[12]  Therefore, in light of the above authorities, Safeway's flu shot calls were within the scope of Plaintiff's prior express consent and Safeway is entitled to summary judgment on the TCPA claims.

## CONCLUSION

For the reasons stated above, Safeway is entitled to summary judgment on Plaintiff's TCPA claims on two alternative grounds—the calls are exempt from the consent requirement under the Exigent Healthcare Treatment Exemption, or, to the extent there is a genuine dispute of material fact as to whether the calls constitute telemarketing, Plaintiff provided her express consent to receive such calls under the Telemarketing Health Care Exception.  The Court therefore GRANTS Safeway's motion for summary judgment.  Judgment will be entered in Safeway's favor on Plaintiff's complaint.

The Clerk shall close the action.

**IT IS SO ORDERED.**

Dated: October 11, 2016

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[12] At the hearing, Plaintiff argued that the second flu shot call from January 9, 2015 could not be within the scope of her provided consent because she had already received the first call on November 6, 2014 and received a flu shot at Safeway's pharmacy the very next day. (*See* Dkt. No. 72 at 37.)  The Court, however, treats both of Safeway's flu shot calls to Plaintiff the same because Plaintiff did not revoke her consent at any point in time. *See Reardon*, 115 F. Supp. 3d at 1102 ("The 2015 FCC Order also makes clear that consumers may revoke consent through any reasonable means, either orally or in writing.") (citation omitted).  Thus, while the January 2015 flu shot call may have been made in error, the reasonable trier of fact would nevertheless have to find that it was closely related to the original purpose for which Plaintiff provided her number, i.e., to get a flu shot, and thus within the scope of Plaintiff's express consent.